## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**CLARA FINCH CRUZ, M.D.**                                                        **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.:2:18-cv-2483**

**ROBERT WILKIE, ACTING SECRETARY,**
**U.S. DEPARTMENT OF VETERANS AFFAIRS**                          **DEFENDANT**

### COMPLAINT
### JURY TRIAL DEMANDED

Plaintiff Clara Finch Cruz, M.D. brings this complaint, by and through her attorneys, Johnson & Bennett, PLLC, alleging discrimination by the Defendant, Robert Wilkie, Acting Secretary, U.S. Department of Veterans Affairs, and states as follows:

### PARTIES

1.      Plaintiff, Dr. Clara Finch Cruz ("Dr. Finch Cruz"), is an individual residing in Shelby County, Tennessee.

2.      Defendant, Robert Wilkie, Acting Secretary, U.S. Department of Veterans Affairs ("VA"), is acting secretary of the VA, a United States of America federal agency, which agency conducts business in Memphis, Shelby County, Tennessee.

### NATURE OF THE COMPLAINT

3.      Dr. Finch Cruz brings this case for discrimination (sex, disability, national origin, race), a hostile work environment, reprisal, and for violations of the Privacy Act.

4.      Dr. Finch Cruz filed a complaint with the Office of Resolution Management ("ORM") raising these issues on May 11, 2017, (200I-0614-2017101635) and amended her complaint on October 9, 2017, alleging further discrimination, reprisal, and a violation of the

Privacy Act in connection with the alleged continued reprisal.  The amendment was accepted on October 12, 2017.

5.      Dr. Finch Cruz received her Final Agency Decision on April 26, 2018.

6.      Pursuant to 29 C.F.R. § 1614.407(a), Dr. Finch Cruz brings this Complaint, seeking relief from Defendant for its harassment, discrimination, hostile work environment, and reprisal, within 90 days of receipt of the VA's Transmittal of Final Agency Decision (Exhibit A).

7.       Plaintiff timely files this cause of action.

## JURISDICTION AND VENUE

8.      The events giving rise to this complaint took place in Memphis, Tennessee.

9.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343, for a cause of action arising under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e-16, the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et. seq*.  This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988 and 5 U.S.C. §§ 552a(g)(3)(B) and/or (4)(B), 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d).

10.      Venue is proper in this District Court pursuant to 28 U.S.C. § 1391.

## FACTS

11.      Plaintiff, Clara Finch Cruz, M.D., is a Hispanic woman from Puerto Rico who began working for the VA in 2005.

12.      Dr. Finch Cruz worked at the VA New Jersey as Chief of Pathology and Laboratory Medicine Service from 2005 until approximately 2011 or 2012.

13.      Following her role as Chief of Pathology and Laboratory Medicine Service at the VA New Jersey, Dr. Finch Cruz served as Lead Pathologist for the VISN 3 network until she left

to become Chief of Pathology and Laboratory Medicine Service ("the Service") at the VA Medical Center in Memphis ("VAMC Memphis").

14.     Dr. Finch Cruz was recruited to VAMC Memphis by then Chief of Staff, Dr. Christopher Marino.

15.     Dr. Finch Cruz visited the facility and had a number of telephone discussions with Dr. Marino and others regarding the state of the Pathology and Laboratory Medicine Service prior to taking the position.

16.     Based on the information provided to her, Dr. Finch Cruz knew that there had been no Service Chief for Pathology and Laboratory Medicine Service for over five years.

17.     Prior to Dr. Finch Cruz assuming the role of Chief of Pathology and Laboratory Medicine Service at VAMC Memphis, there had been an Acting Chief of the Service for five to six years, followed by another Acting Chief in the year preceding Plaintiff filling the role of Chief of the Service.

18.     Dr. Finch Cruz was aware that she was coming into a role where there was a need for improvements and modernization of the Pathology and Laboratory Medicine Service.

19.     During her interview with Dr. Marino for the position of Chief of Pathology and Laboratory Medicine Service, Dr. Marino advised Plaintiff that he had less concerns about the Laboratory and more concerns regarding interpersonal issues with the pathologists.

20.     Dr. Finch Cruz accepted the position of Chief of Pathology and Laboratory Medicine Service, including a pay increase and a monetary recruitment incentive to move to Memphis.

21.     Dr. Finch Cruz began as Chief of the Service on July 14, 2013.

22.     Dr. Finch Cruz, as a Service Chief, was a GS-15/Tier 3 employee, and received maximum pay under that grade and tier.

3

23.     Dr. Finch Cruz answered directly to the Chief of Staff, Dr. Marino.

24.     Through the years 2014 through December 8, 2016, all of Dr. Finch Cruz's performance evaluations were Excellent or Fully Successful.

25.     Dr. Finch Cruz faced a number of challenges after assuming the post as Chief of Pathology and Laboratory Medicine Service as she came to realize the neglect the Service had endured in the years when there was no permanent chief.

26.     VAMC Memphis was a Group 1a (highest complexity) laboratory, but was not fully automated, which was one of the first things Dr. Finch Cruz noticed and began to correct.

27.     Upon starting her job at VAMC Memphis, Dr. Finch Cruz found a number of issues she had not been made aware of during her interview process.

28.     Dr. Finch Cruz immediately began taking steps to correct the Service's deficiencies.

29.     Dr. Finch Cruz worked tirelessly to improve the status of the Service, including preparing for inspections, sorting through pending investigations she had not known of, and implementing new Standard Operating Procedures ("SOP") to bring the Service to comply with standards set for Pathology and Laboratory Services.

30.      Dr. Finch Cruz found that the staffing of the Service was not adequate and put in requisitions for new hires, continually, throughout her tenure as Chief.

31.     Dr. Finch Cruz discovered staff were in positions for which they were not qualified and had to reorganize the staff that was in place.

32.     Dr. Finch Cruz brought in different technology to allow a better distribution of the workload to help with the staff deficiencies.

33.     At one point, the Service was at a 40% vacancy.

34.     Approval for new hires was not readily given.

35.     During her last year as Service Chief, Dr. Finch Cruz was able to recruit 23 new hires.

36.     Dr. Finch Cruz met with her Chief to set annual goals for her performance evaluation and pay for performance bonuses.

37.     Dr. Finch Cruz met with her subordinates to set their annual goals for performance evaluations and pay for performance bonuses and calendared intermittent meetings with her staff to address progress for the goals that were set at the beginning of the fiscal year.

38.     Over time, Dr. Finch Cruz addressed all issues made known to her, some quickly and some taking longer than others to resolve.

39.     If new SOPs did not address an issue, a memorandum from the Laboratory Manager that Dr. Finch Cruz had to hire would be sent out to the personnel affected to advise them of changes in procedure to be sure the Service was meeting its standards and goals.

40.     Dr. Finch Cruz met with her Chief of Staff, Dr. Marino, monthly, to review the ongoing issues being addressed in the Service.

41.     Dr. Marino was aware of the issues that existed in the Service, yet his evaluations and pay for performance reviews all reflected his satisfaction with the job being performed by Dr. Finch Cruz.

42.     When Dr. Finch Cruz took over the Service in mid-2013, the College of American Pathologists ("CAP") had found 42 deficiencies in its last review, but when CAP returned in 2015, just two years later, the deficiencies had gone down to seven.

43.     Seven deficiencies from CAP for a 1a lab showed Dr. Finch Cruz made significant progress in improving the Service.

44.     Additionally, Dr. Finch Cruz had discovered that when she started in 2013 that the Labratory was under two different investigations by the Office of Inspector General but was able to resolve the issues.

45.     In 2016, the Joint Commission came and audited the Labratory and there were no findings.

46.     Under Dr. Finch Cruz's supervision and guidance, the VAMC Memphis Laboratory went from being in the lower 50s for productivity and cost-efficiency to being in the top 20 VA Labs in the country and ahead of VAMC Tennessee Valley Healthcare System in Nashville.

47.     Dr. Finch Cruz had scheduled medical leave that began on September 21, 2017, for surgery and treatment.

48.     While on leave, Dr. Finch Cruz was diagnosed with breast cancer and notified Dr. Marino of her diagnosis and the projected treatment plan.

49.     Dr. Finch Cruz had some intermittent time at VAMC Memphis between September 20, 2016, and her official return on January 9, 2017.

50.     Following her second surgery on November 11, 2016, Dr. Marino had instructed Dr. Finch Cruz to continue working on recruiting pathologists, a project that Plaintiff worked on with then Acting Deputy Chief of Staff, Dr. Thomas Ferguson, consisting of emails and some face to face meetings.

51.     During the time Dr. Finch Cruz and Dr. Ferguson worked together to recruit pathologists intermittently between November 21, 2016, through December 23, 2016, never once did Dr. Ferguson raise any issues with Dr. Finch Cruz's performance as Chief of the Service.

52.     Dr. Finch Cruz also represented the VA Memphis in Murfreesboro, TN for a week from December 12 to December 16, 2016, which was authorized leave.

6

53.     During the entire time between September 21, 2016, and January 9, 2017, Dr. Eugene Pearlman served as Acting Chief of the Service, whether Dr. Finch Cruz was present at VAMC Memphis or not.

54.     Dr. Marino retired from Chief of Staff for VAMC Memphis on or about December 31, 2016.

55.     Upon returning to work in January 2017, Dr. Finch Cruz scheduled a meeting with then Acting Chief of Staff, Dr. Thomas Ferguson, a white male, on January 12, 2017.

56.     During this meeting with Dr. Ferguson on January 12, 2017, Dr. Finch Cruz engaged in protected activity by advising Dr. Ferguson of her disability and indicated that she would be completing her treatment in the coming months and would need to be accommodated.

57.     After Dr. Finch Cruz told Dr. Ferguson of her breast cancer, he told her he did not think she should work and that he needed to have someone as Chief who could work 12-hour shifts, despite this not being a job requirement.

58.     After Dr. Finch Cruz requested accommodation for her disability, Dr. Ferguson requested that Dr. Finch Cruz step down from her position as Chief of the Service.

59.     At the same January 12, 2017, meeting, Dr. Ferguson advised Dr. Finch Cruz that his mother had worked while ill and that he thought it had not been a good for her to justify his request that Plaintiff step down from her role as Chief.

60.     Dr. Ferguson admitted under oath that he discussed his mother's health in the same meeting.

61.     Dr. Finch Cruz refused to step down.

62.     On January 16, 2017, Dr. Finch Cruz emailed Dr. Ferguson and Natalie Brown, Chief Human Resources Management Service, to advise them that she had seen her Radiation

Oncologist and received her treatment schedule to complete the treatment protocol for her breast cancer.

63.     Dr. Finch Cruz requested an accommodation from Ferguson and Brown that she would need to work a reduced schedule through February 15, 2017, when her radiation treatment was completed, at which time she would resume her normal 9:00 AM to 5:30 PM tour of duty.

64.     Ms. Brown followed up with Dr. Finch Cruz to clarify the request for accommodation, confirming that Dr. Finch Cruz planned to take leave for the hours of 1:30 PM to 4:30 PM to complete her eight-hour tour.

65.     Ms. Brown recommended to Interim Chief of Staff, Dr. Ferguson, that he approve the request.

66.     On January 20, 2017, Dr. Finch Cruz was in another meeting with Dr. Ferguson where he advised her that if she did not step down from her position, he would remove her.

67.     Dr. Finch Cruz told Dr. Ferguson that she would not step down.

68.     During the January 20, 2017, meeting, Dr. Ferguson showed Dr. Finch Cruz a letter from the Gastrointestinal Tumor Board, comprised of all white men and addressed to Dr. Javed Tunio, then Acting Associate Chief of Staff, Chief of Medicine, regarding delayed specimens from December 30, 2016.

69.     As Dr. Finch Cruz had been on leave since September 21, 2016, Dr. Eugene Pearlman had been Acting Chief of Pathology and Laboratory Medicine Service in her absence, which included December 30, 2016.

70.     When Dr. Finch Cruz returned to work on January 9, 2017, Dr. Pearlman, nor anyone else at the VAMC Memphis, notified Dr. Finch Cruz of any issues with the Service that arose during her absence.

71.     On January 20, 2017, when Dr. Ferguson briefly showed Dr. Finch Cruz the letter from the Tumor Board, comprised of all white men, Dr. Finch Cruz had no idea of what the issue was.

72.     After the meeting with Dr. Ferguson on January 20, 2017, Dr. Finch Cruz immediately began to investigate the issue raised in the letter Dr. Ferguson had shown her from the Tumor Board.

73.     Once Dr. Finch Cruz became aware of the problem, which was in regard to delayed specimens from end of December 2016 when she was on leave, she and her Laboratory Manager, Zaida Rivera, were able to assess the issue, discover the problem, and rectify the situation by January 23, 2017.

74.     Dr. Pearlman admitted to Dr. Finch Cruz that after she went out on leave in September, the pathologists had stopped following procedures Dr. Finch Cruz had put in place to help prevent the type of issues raised by the Tumor Board.

75.     On January 23, 2017, Dr. Ferguson emailed Dr. Finch Cruz at 8:36 AM to ask if she had made a decision as to his request.

76.     That same day, Dr. Finch Cruz engaged in protected activity by emailing Dr. Ferguson a detailed memorandum, copying the Human Resources Officer, Interim Medical Director, EEO, and VISN9 officials, advising him that she would not step down from her position, as requested by Dr. Ferguson, because of her breast cancer.

77.     In that same memorandum, Dr. Finch Cruz advised Dr. Ferguson that she was more than capable of handling her responsibilities and that she would be seeking legal advice based on his actions.

78.     On or about January 30, 2017, Dr. Finch Cruz's FMLA paperwork was hand-delivered by her assistant, Ms. Brenda Hamilton, to Dr. Ferguson (Acting Chief of Staff Office) and to Ms. Barrett in Human Resources.

79.     On February 5, 2017, Dr. Ferguson presented Dr. Finch Cruz with a Memorandum dated February 1, 2017, indicating that she was being "detailed" out of her position as Chief in order to conduct a Fact Finding into her performance as Chief of Pathology and Laboratory Medicine Service.

80.     The memorandum indicated that the Chief of Staff Office, headed by Interim Chief of Staff, Dr. Ferguson, was reviewing information to determine if Dr. Finch Cruz had failed in her role as Chief of the Service, setting forth vague allegations that Dr. Finch Cruz had not produced sustained plans from site visits; that she had not met hazardous materials handling; and she had failed to meet clinical standards of care.

81.     Dr. Finch Cruz was unable to formulate a response to address such vague allegations and her counsel wrote Dr. Ferguson to advise him that more information was necessary to address his retaliatory act of demoting her from her position.

82.     While the memorandum indicated Dr. Finch Cruz was being detailed out of her position, in fact, she was never returned to her position of Chief of Pathology and Laboratory Medicine Service.

83.     The memorandum indicated that Dr. Finch Cruz would be Laboratory Director for VAMC Memphis' Community Based Outpatient Clinics ("CBOC") and non-VA CBOC and that her supervisor would be Dr. Eugene Pearlman, a white male.

84.     The memorandum also noted that Dr. Finch Cruz would keep her pay, but she was now a Tier 2 employee, rather a Tier 3 employee, which affected Dr. Finch Cruz's pay scale.

85.     Dr. Finch Cruz was relocated to an office in the basement of the building.

86.     Dr. Ferguson testified under oath that he removed Dr. Finch Cruz from her position as Chief of the Service.

87.     Bulletin Number 2017-025 was issued by Interim Medical Center Director, David Wood, on February 8, 2017, stating that effective February 5, 2017, Dr. Eugene Pearlman, a white male, would assume the role as the Acting Chief of Pathology and Laboratory Medicine Service.

88.     Dr. Finch Cruz contacted ORM and filed her informal complaint against the agency based on Dr. Ferguson's actions on February 3, 2017.

89.     ORM acknowledged said informal complaint contact on February 8, 2017.

90.     On February 13, 2017, Dr. Finch Cruz was contacted by Catherine Austin, Chief of Nutrition and Food Services regarding Dr. Ferguson's request that she conduct a Fact Finding regarding incidences in the Service to set up a meeting on February 16, 2017, at 10 AM.

91.     Dr. Finch Cruz's counsel sought more information into the subject matter of the fact finding, but no further information was provided, other than what was in the memorandum that removed Dr. Finch Cruz from her position as Chief.

92.     On February 16, 2017, Dr. Finch Cruz emailed Dr. Pearlman, Acting Chief of the Service, to notify him that an independent audit commissioned by Veteran Health Administration ("VHA") found that the Pathology and Laboratory Medicine Service at VAMC Memphis was the highest ranked Laboratory (Group 1a) in VISN9, pursuant to a report dated January 13, 2017, and that three key audits in FY 2016 showed that the Laboratory Services were on track and achieving significant success.

93.     Subsequently, on February 21, 2016, Ms. Austin submitted over 120 questions to be answered by Dr. Finch Cruz as part of the fact finding, apologizing for the "length and breadth" of the questions, but not giving Dr. Finch Cruz any deadline for responding.

94.     On March 1, 2017, a VHA assessor was in to inspect the lab services in one of the outpatient clinics overseen by Dr. Finch Cruz in her new capacity of Director, which resulted in no citations.

95.     On March 2, 2017, a day that Plaintiff was not at work, Ms. Austin emailed Dr. Finch Cruz to ask if Dr. Finch Cruz could send in her responses to the questions or whether Ms. Austin could pick them up.

96.     On March 8, 2017, Dr. Finch Cruz emailed Ms. Austin to advise her that VHA National Enforcement Office had been to the Nonconnah CBOC for an inspection which delayed the responses.

97.     Dr. Finch Cruz advised Ms. Austin that she would need an additional two weeks to complete the questions, to which Ms. Austin replied, congratulating Dr. Finch Cruz on her inspection and letting her know that she was sorry she had not given a deadline and requested the responses as soon as possible.

98.     Dr. Finch Cruz worked on the questions for several weeks, as the questions covered her entire tenure as Chief of the Service and included many questions that were impossible to answer due to the vague nature of the questions.

99.     On March 24, 2017, counsel for Dr. Finch Cruz emailed Ms. Austin regarding the need for additional time to review the questions and Plaintiff's responses to same, but Ms. Austin replied in an unprofessional manner that counsel and Dr. Finch Cruz were not cooperating with her, stating that, "The time is over," giving Plaintiff until close of business to send the responses or she would set a meeting with Plaintiff to get the answers and closing with "Respectfully, but not surprised."

100.    On March 28, 2017, Dr. Finch Cruz forwarded her responses and exhibits for the fact finding to Ms. Austin.

101.    On April 12, 2017, Plaintiff received a notification that she had received her pay for performance for FY 2016, but she had not met with her supervisor to sign off on the award, but she and Dr. Marino had reviewed her goals before he left and he had set her pay for performance in December 2016 at 80% to 85%.

102.    The pay for performance received by Dr. Finch Cruz in FY 2016 was lowered to 70% by Dr. Ferguson without any discussion or meeting, in violation of VA policy.

103.    On April 25-26, 2017, Dr. Ferguson requested the Pathology and Laboratory Medicine Service of VAMC Memphis to be reviewed, again, by VISN 9 inspectors who conducted a mock (Joint Commission/ OIG) inspection.

104.    The inspection again found no major deficiencies for those areas under Dr. Finch Cruz's supervision, which was the same findings of March 2017.

105.    There were some deficiencies noted in the inspection for the Service, but all issues noted arose after Dr. Finch Cruz was no longer Chief of the Service and the deficiencies arose under Dr. Pearlman's supervision.

106.    Dr. Finch Cruz had never been subjected to a mock (Joint Commission/OIG) inspection while serving as Chief of Pathology and Laboratory Medicine Service and the first time this happened was after Plaintiff filed her claim against VAMC Memphis.

107.    On April 28, 2017, Dr. Finch Cruz received an email and phone call from Brenda Hamilton stating that Dr. Finch Cruz's last three Ongoing Professional Practice Evaluations ("OPPEs") were misplaced by the Chief of Staff Office and inquired if Plaintiff had copies of said OPPEs.

108.    Dr. Finch Cruz did not receive copies of her OPPEs because it is not the practice of VAMC Memphis.

109.    OPPEs of the Chief of Pathology were held by the Chief of Staff, Dr. Ferguson and Mr. Vincent Glover, who did two before he retired in November 2016.

110.    This contact about the missing OPPEs came just before the credentialing committee meeting and the Clinical Executive Board (CEB) meeting scheduled for May 2, 2017, where Dr. Finch Cruz was to have her credentials renewed.

111.    Dr. Ferguson made a new rule just weeks before Dr. Finch Cruz's OPPEs were "lost" that if the OPPEs were missing from a clinician file the clinician could not be credentialed.

112.    After Plaintiff's counsel contacted counsel for Defendant, Dr. Pearlman completed Dr. Finch Cruz's OPPEs that were missing and Dr. Finch Cruz had her credentials renewed a month later, in June 2017.

113.    On May 2, 2017, Dr. Andrew J. Han, resident chief at Memphis VA, emailed several VA staff members including, but not limited to, Melissa Yopp, RN JD, Karen Gillette, RN, Dr. Decha-Umphai, nursing manager, Rosann S. Townsend, Dr. Shelly Swindler, Dr. James Lewis, Dr. Nathan Zajac and Dr. Finch Cruz, that he would have to report Dr. Finch Cruz to the Accreditation Council for Graduate Medical Education ("ACGME") for a procedure change on the policy on Cytology specimens.

114.    The supposed policy at issue in Dr. Han's email did not state what Dr. Han alleged and further, Dr. Finch Cruz was not Chief of the Service at the time this incident occurred.

115.    On May 11, 2017, Dr. Finch Cruz filed her formal EEO Complaint alleging discrimination based on sex (female), national origin (Puerto Rico), race (Hispanic), disability (breast cancer), reprisal, and being subjected to a hostile work environment.

116.    On May 25, 2017, VA ORM sent its Notice of Acceptance of the EEO Complaint for Clara Finch Cruz, Case No. 200I-0615-2017101635, filed May 11, 2017, indicating 13 instances evidencing the discrimination, reprisal, harassment and hostile work environment.

117.     The ORM letter was also sent to newly appointed Medical Director for VAMC Memphis, David Dunning.

118.     The ORM letter accepted events 2, 5, 7, and 11, which were Plaintiff's request for accommodation, her removal as Chief and change from Tier 3 to Tier 2, the change in her pay for performance for FY 2016, and the delay in her credentialing process, as "discrete acts" to be investigated as "independently actionable claims" as well as establishing an overall pattern of harassment.

119.     The ORM letter also indicated that events 1-13, all based on the facts set forth above, were accepted for further investigation of Plaintiff's harassment claim.

120.     Dr. Finch Cruz served her response to the EEO investigation Interrogatory on June 8, 2017.

121.     Dr. Finch Cruz was in Puerto Rico in September 2017 following Hurricane Irma to attend a funeral for her husband's father who had passed away in the aftermath of the storm.

122.      Both Dr. Finch Cruz and her husband's family live in Puerto Rico.

123.     Dr. Finch Cruz returned to Memphis and went to work on September 21, 2017.

124.     On September 22, 2017, Dr. Finch Cruz was given a Memorandum dated September 18, 2017, from Interim Chief, Quality Management and Performance Improvement (OOB) with the subject of "Interview Arrangement for Witnesses – Administrative Investigation Board" ("AIB").

125.     The Memorandum was addressed to Dr. Finch Cruz and indicated that the Medical Director of the Memphis VA Medical Center had convened an Administrative Investigation Board.

126.     While there were additional paragraphs regarding the location and time to appear, forms regarding obligations and rights, as well as contact information for Risk Manager, Sharon O'Mearns, no information was provided as to the purpose of the investigation.

127.     The time for Dr. Finch Cruz to appear was set for Monday, September 25, 2017, at 9:00 AM.

128.     Dr. Finch Cruz was not told of any information she needed to bring or the purpose of the AIB.

129.     Dr. Finch Cruz was not required to sign for the Memorandum requiring her presence, in violation of VA Regulations.

130.     Upon arriving at her designated time to give testimony, with the undersigned counsel, Dr. Finch Cruz was introduced to the two Board members, a Chief of Staff and one peer Chief of Pathology and Laboratory Medicine Service.

131.     Before beginning on the record, the Chairman of the investigation, Dr. Scotte Hartronft, advised Dr. Finch Cruz that she was appearing at the AIB as "someone with relevant information regarding the allegations being investigated."

132.     The Chairman stated that there was nothing more than allegations that were being investigated.

133.     When questioned as to the purpose of the investigation, the Chairman stated that the AIB had been convened concerning Dr. Finch Cruz's role as Chief of Pathology and Laboratory Medicine Service during her tenure at VAMC Memphis, from the time of her recruitment in July 2013 through the present, despite the fact that Dr. Finch Cruz had been removed from the position of Chief of Pathology and Laboratory Medicine Service in February 2017.

134.     According to VA Regulations and Guidelines, any AIB that is convened is to be

limited in scope and time.

135.    The Privacy Act, 5 § 552a(e)(2) requires that the board collect information, to the greatest extent possible, from the subject of an investigation prior to seeking information from outside sources.

136.    The AIB was convened to look into "allegations" regarding Dr. Finch Cruz' tenure as Chief, but she was never consulted or told that she was the subject of any AIB investigation until she appeared in response to her witness notification which failed to state the purpose of the AIB in violation of the Privacy Act 5 § 552a(e)(3).

137.    Since she filed her complaint of discrimination and harassment, Dr. Finch Cruz was subjected to numerous inquiries, difficulties, and actions which created a severe and pervasive hostile work environment.

138.    With the convening of the AIB, Dr. Finch Cruz was subjected to just over two hours of sworn testimony on the first day and was called back to provide more testimony on the second day.

139.    On the second day of the AIB hearing, Dr. Finch Cruz was questioned over any number of matters spanning her tenure as Chief.

140.    For her second round of testimony, Dr. Finch Cruz was initially told to appear at 4:00 p.m. on Tuesday, September 26, 2017, to continue her testimony, however, she had a follow up oncologist appointment scheduled that Tuesday afternoon and had to adjust her schedule to miss lunch and appear to testify at 12:00 noon, despite notifying VA officials that she had a doctor's appointment, associated with her stated disability and requesting an accommodation to appear the following day.

141.    Dr. Finch Cruz's request for an accommodation to attend the following day was refused and she was told to come in earlier, at noon, even though she would have to leave at a set

time to make her doctor's appointment.

142.    The justification for refusing to allow her to come on the third day, which was supposed to be the duration of the AIB, was that the Board members were not returning the following day, Wednesday, September 27, 2017.

143.    After arriving just before noon and being made to wait while the Board members finished lunch, Dr. Finch Cruz testified until she had to leave in order to make her doctor's appointment.

144.    The tight time frame limited Dr. Finch Cruz' ability to fully and completely respond to questions as both Board members were hurrying her through her responses and often were asking multiple questions at the same time.

145.    When asked if she had anything to add, Dr. Finch Cruz was not able to add anything as she was already past the time she needed to leave to make her doctor's appointment.

146.    The failure to accommodate Plaintiff's request for a different time to continue her testimony resulted in her being rushed through her answers, not being allowed to fully answer, and not being able to address the issues raised during the interrogation as she would have preferred.

147.    Dr. Finch Cruz stated on the record that she believed the AIB was convened as further reprisal for her EEO and protected activity and that it was nothing more than yet another attempt to find some justification for the unlawful acts of Dr. Ferguson and those around him when he removed her from her position as Chief of Pathology and Laboratory Medicine Service and replaced her with a less qualified white male who was not suffering from breast cancer.

148.    The Privacy Act violations were also preserved on the record, both days, by Plaintiff's counsel.

149.    While Dr. Finch Cruz was asked many questions, she had no notice of what the

questions would consist of and had to rely strictly on memory to answer the questions which covered a variety of topics and went back for years.

150.    Documentation to support that Dr. Finch Cruz had been in compliance with guidelines, regulations and rules regarding her Service could have been provided ahead of the hearing and would have dispensed with many of the various "allegations" and constant need for Plaintiff to tell the Board where to find the information they sought.

151.    Board Member Dr. Rana Samuel, noted on the record that it was "very serious" if Dr. Finch Cruz had documentation to defend herself against the "allegations" in the AIB and these documents were not being provided by the people who had control of them, despite the fact that Dr. Finch Cruz had told a Regional Technologist for VHA where to locate the documents at issue.

152.    The AIB members also sought to lay fault with Dr. Finch Cruz for issues in the Service since she had been removed from the position and replaced by a less qualified white male.

153.    Dr. Finch Cruz had to appear and testify at an AIB convened to investigate her role as Chief of the Service while her family in Puerto Rico was feeling the impact of Hurricane Maria and her husband had remained behind in Puerto Rico when Plaintiff returned to Memphis.

154.    Dr. Finch Cruz was unable to contact her husband or family during the time she was being subjected to the AIB and while following up with her oncologist.

155.    Dr. Finch Cruz was under a great deal of stress and worry while dealing with an AIB that sought to find fault with her role as Chief in order to justify Dr. Ferguson's removal of her as Chief of the Service.

156.    Despite the fact that Dr. Finch Cruz advised the Board that she had documentation that would support her testimony and answer the questions being asked, nothing further was ever requested of her.

157.    Dr. Ferguson requested that David Dunning, Medical Director of VAMC Memphis,

19

convene the AIB with no set purpose and no limitation in scope for the sole purpose of continued reprisal and harassment of Plaintiff for filing her EEO Complaint.

158.     According to the witness list for the AIB, which included Dr. Finch Cruz despite the fact that she was the subject of the investigation, the clinicians who provided information used against Plaintiff, with the exception of Zaida Rivera and Lora Kirk, were all white men, closely associated with Chief of Staff, Dr. Ferguson.

159.     The memorandum convening the AIB was from David Dunning, Medical Director, white male, dated August 4, 2017, and designated three people to serve on the AIB to "conduct a thorough investigation into the fact [sic] and circumstances regarding allegation [sic] of the failure by Dr. Clara Finch Cruz to perform the duties and responsibilities assigned to her in her position of Chief, Pathology & Laboratory Medical [sic] Services."

160.     The AIB members were Chairman Hartronft, Chief of Staff from Los Angeles, Dr. Rana Samuel, Chief of Pathology and Laboratory Medicine Service in Western New York, and Dr. Shauna S. Kincheloe-Zaren, Chief of Staff from Texas.

161.     A subsequent Memorandum was issued by David Dunning on September 11, 2017, rescinding Dr. Kincheloe-Zaren's appointment to the AIB and including an additional topic to include in the investigation, "a determination regarding lack of oversight by Dr. Finch Cruz of the performance and operations of the Pathology & Laboratory Medical [sic] Services at the Memphis VA Medical Center."

162.     David Dunning indicated under oath that Dr. Ferguson had a role in convening the AIB to investigate allegations against Dr. Finch Cruz.

163.     On October 9, 2017, Dr. Finch Cruz contacted ORM to amend her complaint pursuant to 29 C.F.R. § 1614.106(d), to include the incidents related to the AIB.

164.     On October 12, 2017, ORM wrote Plaintiff's counsel and copied Director Dunning on its acceptance of Dr. Finch Cruz's request to amend her complaint to include two additional instances, numbers 14 and 15, stating that event 15, where Plaintiff was not accommodated in providing testimony to the AIB was accepted as an independent claim and the overall harassment that included events 1-15 were accepted in relation to her overall harassment claim.

165.     On November 29, 2017, a report from the AIB was sent to David Dunning recommending administrative action.

166.     The report relies largely on unsubstantiated testimony of Dr. Ferguson and his assistant, Lora Kirk.

167.     The report included exhibits which constantly stressed that the problems with the Service were largely due to lack of staffing and Chairman Hartronft noted that approval for new hires in the Service was not given until July 15, 2016.

168.     While Laboratory Manager Rivera was called to testify by phone for the AIB hearing, she perceived the bias against Dr. Finch Cruz in the questions posed to her and encountered an unwillingness to listen to answers that would have addressed the "allegations" for which the AIB had been convened.

169.     Ms. Rivera's testimony was not cited anywhere in the AIB report.

170.     Exhibits to the AIB report show the Chairman made a concerted attempt to collect information that would reflect negatively on Dr. Finch Cruz, but there was no attempt to locate the quality control documentation used as one of the instances of "neglect" by Plaintiff as far as the Service.

171.     Reasons cited by the AIB report to support action against Dr. Finch Cruz were not accurate and reflected that the AIB had been convened to find reasons to support removal of Dr. Finch Cruz, not just from her position as Chief of the Service, but as a VA employee.

172.    Further, the time frame in which an AIB should be conducted pursuant to VA policy was exceeded.

173.    Essentially all VA 0700 Handbook guidelines for conducting an AIB were ignored.

174.    Dr. Finch Cruz endured over a year of attacks on her professionalism, her competency, her character, and her job performance without any reports as to any findings against her.

175.    The continual assaults on Plaintiff's performance and character were at times overwhelming and humiliating.

176.    Dr. Finch Cruz did not share the facts that are the subject of this matter with her family or others close to her and had to deal with antagonism and hostility while completing radiation treatment and continuing to recover from breast cancer.

177.    During the entire time that Dr. Finch Cruz was facing the attacks on her service as Chief and her character, she continued to work diligently as Director of Laboratory Services/CBOCs.

178.    As her supervisor, Dr. Eugene Pearlman, Acting Chief of Pathology and Laboratory Medicine Service, met with Dr. Finch Cruz to set her FY 2017 goals on February 21, 2017, and rated her as Fully Successful or better, selecting "Outstanding" in the Summary Rating section in her performance appraisal for FY 2017, which he signed on January 26, 2018.

179.    On November 11, 2017, Robert Wise, Human Resources Officer, approved a raise for Dr. Finch Cruz, noting that "Work performance is at an acceptable level of competence."

180.    In December 2017, Dr. Finch Cruz and Dr. Pearlman met to establish her pay for performance goals which were then memorialized in VA Form 10-0432, Performance Pay Recommendation & Approval, noting that Plaintiff was Pay Table 2, Tier 2, signed by both Dr. Finch Cruz and Dr. Pearlman on March 29, 2017.

181.    On January 2, 2018, Dr. Finch Cruz received notification from ORM as to her rights in the EEO process, which was also sent to David Dunning and Pamela Black, EEO Manager/Liaison.

182.    On January 19, 2018, Dr. Finch Cruz elected to request a Final Agency Decision ("FAD") in her 2017 EEO matter.

183.    On January 24, 2018, ORM issued correspondence to the Defendant to issue a FAD pursuant to Plaintiff's January 19, 2018, request.

184.    On February 9, 2018, Dr. Pearlman and Dr. Finch Cruz met to review her goals for her pay for performance bonus, making notations and signed by Dr. Pearlman that same day.

185.    Dr. Pearlman signed the Performance Pay Recommendation & Approval form on February 9, 2018, recommending that Dr. Finch Cruz receive the maximum target bonus of $15,000.00.

186.    Dr. Pearlman noted on the Performance Pay form that, "In FY2017, Dr. Finch Cruz fully met the goals for facility performance (1.0%), participation in facilities activities (1.0%), and excellence in overall clinical care (1.0%), individual achievements for providers with major responsibilities in Clinical Pathology (3.0%) and outstanding individual achievement (1.5%)."

187.    Dr. Finch Cruz never received her FY 2017 Performance Pay.

188.    Beginning February 5, 2018, Dr. Ferguson had his assistant reach out to Dr. Finch Cruz for a meeting to be held on February 7, 2018.

189.    Counsel inquired with VA General Counsel whether Plaintiff could have counsel present for the meeting, which was denied based on the fact that VA counsel indicated that it was simply a meeting with a supervisor.

190.    Dr. Ferguson had not been Dr. Finch Cruz's supervisor since he removed her from her position effective February 1, 2017, during her last meeting with Dr. Ferguson on February on or about February 5th or 6th, 2017.

191.    In order to be available for the February 7, 2018, meeting requested by Dr. Ferguson, Dr. Finch Cruz had to cancel all visits to CBOCs in Mississippi that had been scheduled that day.

192.    After clearing her day to meet with Dr. Ferguson on February 7, 2018, Dr. Ferguson cancelled the meeting.

193.    Another meeting with Dr. Ferguson was scheduled for February 14, 2018, but was also cancelled.

194.    On February 23, 2018, the FAD was issued for the 2017 EEO complaint which was received on February 26, 2018.

195.    On February 23, 2018, just over a year from when Dr. Finch Cruz brought her EEO complaint regarding him, Dr. Ferguson scheduled another meeting with Dr. Finch Cruz, at which time he presented her with his proposal for her removal as a government employee, citing reasons that were not founded in fact, including issues that occurred while Dr. Finch Cruz was out on leave in 2016 or after she was removed from Chief of the Service effective February 1, 2017.

196.    Dr. Ferguson also sought to report Dr. Finch Cruz to the medical licensing board, a direct threat to her license and livelihood, and said she could not be rehabilitated as an employee.

197.    At no time during the fact finding, the credentialing issues, or during the AIB was it ever stated that any patient had come to harm as a result of the allegations being levied against Dr. Finch Cruz.

198.    Dr. Finch Cruz, through counsel, appealed the proposed removal to Director Dunning, pointing out the ongoing harassment and reprisal, reminding him that Plaintiff had a

pending EEO complaint against Dr. Ferguson, and setting forth a response to each reason Dr. Ferguson cited as the basis for her removal.

199.    On March 8, 2018, Director Dunning approved the proposed removal of Dr. Finch Cruz as a government employee effective March 16, 2018, citing the same reasons that were in Dr. Ferguson's proposal with the exception that Director Dunning removed any reference to reporting Dr. Finch Cruz to the medical licensing board.

200.    Director Dunning's termination letter included Dr. Finch Cruz's rights in relation to challenging her discharge, specifically noting, "Since the reasons for the action as stated in the notice of proposed discharge do not involve a question of professional conduct or competence, you may appeal this action under the VA grievance procedure…"

201.    Dr. Finch Cruz still requires regular health check-ups due to her breast cancer and needed the health insurance benefits she received to continue to afford health care.

202.    Dr. Finch Cruz was extremely anxious about losing her health insurance.

203.    Though Dr. Finch Cruz was afforded 15 days to file her grievance, which she did, as instructed in Dunning's termination letter, her termination date fell before the grievance was due.

204.    Cheryl Brewer with Human Resources gave Dr. Finch Cruz Director Dunning's termination letter on March 9, 2018. On that same day, March 9, 2018, Dr. Finch Cruz found that she had been locked out of the VA system, had no access to documents, archives, emails, or any other items necessary to continue her role until her end date of March 16, 2018.

205.    Cheryl Brewer advised Dr. Finch Cruz that Dr. Ferguson had given the instructions to shut off Dr. Finch Cruz's access to the VA system.

206.    Dr. Finch Cruz was given a new employee code to allow her to continue to do what work was possible in her final days, but the new code did not allow access to the password-

protected encrypted work, emails, documents, and any other items that she had under her original employee code.

207. Defendant was put on notice to preserve all matters associated with the employee code that was cut off early at Dr. Ferguson's instructions.

208. On March 30, 2018, Dr. Finch Cruz instigated a new informal EEO complaint alleging reprisal based on her 2017 EEO Case No.: 200I-0614-2017101635, including withholding her FY 2017 Performance Pay, disability discrimination, and forced early retirement which was necessary to ensure continued health care coverage, construed as constructive discharge.

209. The paperwork for the early forced retirement was submitted on Dr. Finch Cruz's termination date of March 16, 2018.

210. On March 16, 2018, Dr. Finch Cruz received an email to come by Human Resources to sign off on her new FY 2017 Performance Pay, a copy of which was obtained by Dr. Finch Cruz.

211. The new Performance Pay Recommendation & Approval form completed by Dr. Ferguson for Dr. Finch Cruz was not based on any goals for Dr. Finch Cruz, had never been reviewed or seen by Dr. Finch Cruz, listed her as a Tier 3 employee, which was false, and did not contain Dr. Finch Cruz's signature

212. The false performance pay form from Dr. Ferguson was signed by Dr. Pearlman on December 17, 2017, twice, once for the goals being set, and again, as recommending official, only recommending $7,500 in pay, half of the maximum, and was approved by Dr. Ferguson on January 5, 2018.

213. Dr. Ferguson prepared the new false performance pay form to continue to harass, discriminate, retaliate, and distress Dr. Finch Cruz on her last day of employment, after she had

26

already signed off on the performance pay awarded by her supervisor, Dr. Pearlman, in February 2018, indicating that she would get the maximum of $15,000.00, which was never signed off by Dr. Ferguson.

214.    Dr. Finch Cruz filed a new formal Complaint, EEO Case No.: 200I-0614-2018103373, on May 9, 2018.

215.    As of this filing, Dr. Finch Cruz has responded to the investigation interrogatory and 180 days have not passed since filing her formal complaint for EEO Case No.: 200I-0614-2018103373.

216.    As the 2018 EEO complaint is directly tied to reprisal and retaliation for the 2017 EEO complaint, Plaintiff should be able to adjudicate all of her claims in this action and since there is a civil action pending that includes facts and circumstances which are detailed in her EEO Case No.: 200I-0614-2018103373, it may be proper to close said EEO investigation.

217.    Should the Court find that Plaintiff cannot bring her claims under EEO Case No.: 200I-0614-2018103373, Plaintiff will seek to amend to include her termination, should the retaliation claim flowing from the instant matter not be ripe for adjudication in the United States District Court.

218.    As a result of the foregoing facts, Dr. Finch Cruz has suffered substantial monetary loss, loss of earnings, earning capacity, and fringe benefits, humiliation, emotional anxiety, mental anguish, stress, loss of weight, anxiety, insomnia, loss of professional reputation, and other damages.

219.    The Defendant has violated Dr. Finch Cruz's right to be free from discrimination, harassment, and a hostile work environment based on her race, sex, and national origin under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16.

220.     The Defendant has violated Dr. Finch Cruz's right to be free from discrimination, harassment, and a hostile work environment based on race pursuant to 42 U.S.C. § 1981.

221.     The Defendant has violated Dr. Finch Cruz's right to be free from discrimination, harassment, and a hostile work environment based on her disability pursuant to the Rehabilitation Act, 29 USC § 701 *et. seq*.

222.     The Defendant has violated Dr. Finch Cruz's rights under the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*

223.     The Defendant has violated Dr. Finch Cruz's right to be free from reprisal and retaliation for undertaking protected activity based on her race, sex, and national origin under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16.

224.     The Defendant has violated Dr. Finch Cruz's right to be free from reprisal for undertaking protected activity based on race pursuant to 42 U.S.C. § 1981.

225.     The Defendant has violated Dr. Finch Cruz's right to be free from reprisal for undertaking protected activity based on her disability pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et. seq*.

226.     The Defendant has conducted itself intentionally, deliberately, willfully, and in callous disregard of the rights of Dr. Finch Cruz.

## **REQUEST FOR RELIEF**

WHEREFORE, Dr. Finch Cruz respectfully requests that jury be empaneled to hear these claims, an entry of a judgment in her favor and against the VA and demands such legal and equitable relief as will effectuate the purposes of 42 U.S.C. § 1981, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*, and the Rehabilitation Act, 29 USC § 701 *et. seq*., including but not limited to, the following:

a. Accrual of back pay, performance pay, front pay, fringe benefits and other emoluments of employment;

b. Compensatory damages;

c. Liquidated damages;

d. Declaring that the VAMC Memphis discriminated and retaliated against Dr. Finch Cruz in the terms and conditions of her employment, contrary to the policies of the VA, and establishing a reporting, recordkeeping, and monitoring system to ensure they not recur;

e. Award any actual damages under 5 U.S.C. § 552a(g)(4)(A), the exact amount of which is to be determined at trial but is not less than $1,000;

f. Costs and attorney fees;

g. Appropriate affirmative action;

h. Reinstatement or other equitable relief;

i. Expungement of all records or information maintained by the VA that is inaccurate and/or derogatory to the Plaintiff:

j. Any interest due on the amount awarded; and

k. Any other relief that this Court deems just and equitable.

Plaintiff prays for damages in an amount to be determined by a jury, for reinstatement and for reasonable attorney fees.

THIS the 18th day of July, 2018.

Respectfully submitted,
Dr. Clara Finch Cruz

**/s/ Kristy L. Bennett**
KRISTY L. BENNETT BPR# 30016
TRESSA V. JOHNSON BPR# 26401

Attorneys for Plaintiff
JOHNSON & BENNETT, PLLC
1331 Union Ave., Ste. 1226
Memphis, TN 38104
(901) 402-6830
(901) 462.8629 fax
kristy@myjbfirm.com
tressa@myjbfirm.com