## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**CLARA FINCH CRUZ, M.D.**                                                  **PLAINTIFF**


**v.**                                      **CIVIL ACTION NO.: 2:18-cv-2483-JPM-tmp**


**ROBERT WILKIE, SECRETARY,**
**U.S. DEPARTMENT OF VETERANS AFFAIRS**                    **DEFENDANT**


### PLAINTIFF'S PROPOSED JURY INSTRUCTIONS


     Plaintiff Clara Finch Cruz, M.D. submits the following proposed jury instructions to be given to the jury at the trial of this action. Instructions as to damages and certain evidentiary matters are submitted without waiving the parties' objections to submitting these issues to the jury.

     At this stage, Dr. Finch Cruz is unable to anticipate all the evidence that will be adduced at trial and therefore respectfully requests leave to submit additional proposed instructions based on the evidence that is actually presented. In addition, Dr. Finch Cruz requests leave to submit revised or additional instructions that conform with any rulings the Court may render during the course of these proceedings.

1

## **TABLE OF CONTENTS**

I.  Proposed General Instructions …………………………………………………………....4

    A.  Organization Not to be Prejudiced…………………………………………….......5
    B.  Organizations/Corporations Act Through their Authorized Employees or Agents…....6
    C.  Burden of Proof and Consideration of The Evidence……………………..……..…7
    D.  Credibility and Weighing of Evidence………………………………....…..……....8
    E.  Impeachment — Inconsistent Statements or Conduct……………………….......10
    F.  Direct and Circumstantial Evidence…………………………………….…..……11
    G.  Evidence……………………………………………………………………...……12
    H.  "Inferences" Defined……………………………………………………………13
    I.  Statements and Arguments of Counsel……………………………………………15
    J.  Juror Notes………………………………………………………………....…16
    K.  Demonstratives……………………………………………………….…..……17
    L.  All Available Evidence Need Not be Produced……………………………..……18

II.  Statement of Case
    A.  Clara Finch Cruz s Statement of the Case……………………………………......19
    B.  Robert Wilkie, Secretary, U.S. Department of Veterans Affairs' Statement of the
        Case……………………………….........…………………………………………29
    C.  Stipulations…………………………………………………………………….……37

III.  Applicable Law

    A.  Legal Theories of the Case……………………………………….…………….43
    B.  Specific Claims – Privacy Act – Title VII and Rehabilitation Act…..……………44
    C.  The Rehabilitation Act……………………………………………….…………52
    D.  Disability and Major Life Activities …………………………………….………53
    E.  Rehabilitation Act – Qualified Individual……………………………………54
    F.  Rehabilitation Act – Adverse Employment Action…………………………55
    G.  Rehabilitation Act Causation – "Soley because of Plaintiff's Disability………...…56

    H.  Elements of a Rehabilitation Act Claim- Harassment- Hostile Work Environment-
        Tangible Employment Action……………………………………………….…….52
    I.  Rehabilitation Act- Hostile or Abusive Work Environment…………..……....…60
    J.  Elements Title VII Claim - Harassment- Hostile Work Environment- Tangible
        Employment Action……………………………………………………….…....64
    K.  Definition of Hositle Work Environment…………………………………….…66
    L.  Retaliation Claims…………………………………………………………....…69
    M.  Retaliation – Complaint of discrimination………………………………………71
    N.  Retaliation – Causal Connection…………………………………………………72
    O.  Proffered Legitimate Reason……………………………..……………………….73
    P.  Pretext……………………………………………………………………………74

    Q.  Employer's Honest Belief……………………………………………………75
    R.  Constructive Discharge………………………………………………………76

IV.   Damages

    A.  Consider Damages Only if Necessary………………………………………71
    B.  Damages – Discrimination and Retaliation Claims…………………….……72
    C.  Damages – Proximate Cause…………………………………………....……74
    D.  Damages – Back Pay…………………………………………..……..……75
    E.  Compensatory Damages………………………………………………...……76
    F.  Double Recovery Prohibited……………………………………………...…78

V.    Verdict………………………………………………………………………...79

## I.      PROPOSED GENERAL INSTRUCTIONS

**Proposed Instruction No. 1**

Ladies and gentlemen of the jury, we have now come to the point in the case when it is my duty to instruct you in the law that applies to the case and you must follow the law as I state it to you.

As jurors, it is your exclusive duty to decide all questions of fact submitted to you and for that purpose to determine the effect and value of the evidence.

Our system of law does not permit juror to be governed by sympathy, bias, prejudice, or public opinion.

You must follow the law as I explain it to you whether you agree with it or not. All of the instructions are equally important. The order in which these instructions are given has no significance. You must follow all of the instructions and not single out some and ignore others.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Wheeler v. Memphis/Shelby County Health Dept.*, No. 00-2616; *Preston v. FedEx Corp.*, 2:17-cv-02876. (modified) Court's Instructions to the Jury, Northern District of Mississippi, See e.g. 3:16-cv-00287.

**Proposed Instruction No. 2**

A.      Organization Not to be Prejudiced

In this case, the Defendant, Robert Wilkie, Secretary, U.S. Department of Veterans Affairs, is the same as VAMC Memphis, or the VA, which is an agency of the United States of America.

The fact that a governmental entity or agency is involved as a party must not affect your decision in anyway. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice.

11th Cir Pattern Jury Instructions No. 3.2.3 (2013)

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Sheila White v. The Burlington Northern and Santa Fe Railway Company*, No. 99-2733; *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified).

5

**Proposed Instruction No. 3**

B.    <u>Organizations/Corporations Act Through their Authorized Employees or Agents</u>

When a governmental agency is involved, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

11th Cir Pattern Jury Instructions No. 3.2.3 (2013)

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified).

**Proposed Instruction No. 4**

C.     Burden of Proof and Consideration of The Evidence

I will now instruct you regarding the law on the burden of proof.

In this case, Dr. Finch Cruz bears the burden of proof on all essential elements of her claim by the "preponderance of the evidence."

Preponderance of the evidence simply means that amount of factual information presented to you in this trial which is sufficient to cause you to believe that an allegation is probably true. In other words, to establish a claim by a "preponderance of the evidence" merely means to prove the claim is more likely true than not true.

You must consider all the evidence pertaining to every issue, regardless of who presented it.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Sheila White v. The Burlington Northern and Santa Fe Railway Company*, No. 99-2733 (modified). Court's Instructions to the Jury, Northern District of Mississippi.

**Proposed Instruction No. 5**

D.     Credibility and Weighing of Evidence

You, the members of the jury, are the sole judges of the facts in this case. In order for you to determine what the true facts are, you are called upon to weigh the testimony of every witness and to give the testimony of the witnesses the weight, faith, credit and value to which you think it is entitled.

You should consider the reasonableness or unreasonableness of the testimony of the witness; the opportunity or lack of opportunity of the witness to know the facts about which she or he testified; the intelligence or lack of intelligence of the witness; the interest of the witness in the result of the lawsuit, if any; the relationship of the witness to any of the parties to the lawsuit, if any; and whether the witness testified inconsistently while on the witness stand, or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying.

While you must consider all evidence, you do not have to accept all evidence as true or accurate. You are the sole judges of the credibility of "believability" of each witness and the weight to be given to that witness' testimony.

If a witness is shown to have knowingly testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars and you may reject all of the testimony of that witness or give it such credibility as you may think it deserves.

These rules should guide you, along with common judgment, common experience, and common observations gained by you in your various walks of life, in weighing the testimony of the witnesses in this case. If there is a conflict between the testimony of the witnesses, it is your duty to reconcile that conflict, if you can, because the law presumes that every witness has attempted to and

has testified to the truth.  But if there is a conflict between the testimony of the witnesses which you are not able to reconcile, then it is your duty to determine which witnesses you believe have testified to the truth and which ones you believe have testified to a falsehood.

Immaterial discrepancies do not affect a witness' testimony, but material discrepancies do. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

The greater weight or preponderance of the evidence in a case is not determined by the number of witnesses testifying to a particular fact or a particular set of facts.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Sheila White v. The Burlington Northern and Santa Fe Railway Company*, No. 99-2733 (modified); *Powers v. Bayliner Marine Corp.*, 83 F.3d 789 (6th Cir. 1996).

**Proposed Instruction No. 6**

E.      Impeachment — Inconsistent Statements or Conduct

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony.

If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves; you may, of course, accept any part you decide is true. This is all for you, the jury, to decide.

An act or omission is done "knowingly" if committed voluntarily and intentionally, and not because of mistake or accident, or some other innocent reason.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 7**

F.     Direct and Circumstantial Evidence

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is indirect evidence—that is, proof of one or more facts from which one can find another fact.

There will seldom be 'eyewitness' testimony as to the employer's mental processes. Because such direct evidence of discrimination is rare, victims of employment discrimination may establish their cases through inferential and circumstantial proof. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.

A failure to follow the rules of an organization or an employment contract can be circumstantial evidence of discrimination or pretext.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified). *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 141 (2000); *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). *Harris v. Birmingham Linen Service,* 715 F.2d 1552, 1556, 1558-59 (11th Cir. 1983 *Bass, v Board of County Commissioners of Orange County, 256* F.3d 1095, 1108 (11th Cir.  2001) procedure evidence of pretext); *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 645 (11th Cir. 1998); *Berg v. Fla. Dept. of Labor* & Supplement Sec. 163 F.3d 1251, 1255 (11th Cir. 1998).

**Proposed Instruction No. 8**

G.     Evidence

As stated earlier, it is your duty to determine the facts and in so doing you must consider only the evidence I have admitted in the case. The term "evidence" includes the sworn testimony of the witnesses and exhibits admitted in the record. You are to decide this case only from the evidence that was received—that is, evidence that was presented for your consideration during the trial. The evidence consists of:

1.     The sworn testimony of the witnesses;

2.     The exhibits that were received and marked as evidence; and

3.     Any facts to which the lawyers for both sides have agreed or stipulated.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified). Court's Instructions to the Jury, Northern District of Mississippi.

**Proposed Instruction No.   9**

H.      "Inferences" Defined

Although you are to consider only the evidence in this case, you are not limited to the statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You may draw reasonable inferences from the facts that you find have been proven. Inferences are deductions or conclusions that reason and common sense lead you to make from facts established by the evidence in the case.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified). Court's Instructions to the Jury, Northern District of Mississippi.

13

**Proposed Instruction No. 10**

**Experts**

You have heard [a witness] [witnesses] give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

Authority: FED. R. EVID. 602, 701-705. *See generally United States v. Mansoori*, 304 F.3d 635, 654 (7th Cir. 2002), *cert. denied* 538 U.S. 967, 123 S. Ct. 1761, 155 L.Ed.2d 522 (2003)

**Proposed Instruction No. 11**

I.       Statements and Arguments of Counsel

 Remember that any statements, objections or arguments made by the lawyers are not evidence in the case. You must not consider as evidence any statements of the lawyers made during the trial. The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts and inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in the case. What the lawyers say is not binding upon you.

You must never speculate to be true any insinuation suggested by a question asked of a witness. A question is not evidence. It may be considered only as it supplies meaning to the answer.  As to any questions to which an objection was sustained, you must not speculate as to what the answer might have been or as to the reason for the objection, and you must assume that the answer would be of no value to you in your deliberations.

You must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the Court. Such matter is to be treated as though you had never known it.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Wheeler v. Memphis/Shelby County Health Dept.*, No. 00-2616; *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified). Court's Instructions to the Jury, Northern District of Mississippi.

**Proposed Instruction No. 12**

J.        Juror Notes

If you took notes, please remember that your notes are not evidence. You should keep your notes to yourself. They may only be used to help refresh your personal recollection of the evidence in this case. It is the evidence itself, and not your notes, that you should discuss with the other jurors.

If you cannot recall a particular piece of evidence, you should not be overly influenced by the fact that someone else on the jury appears to have a note regarding that evidence.

Remember, it is your recollection and the collective recollection of all of you upon which you should rely in deciding the facts in the case.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 13**

K.   <u>Demonstratives</u>

Demonstratives have been shown to you in order to help explain facts that are in evidence in the case. These demonstratives are not themselves evidence or proof of any facts. If the demonstratives do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard the demonstratives.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 14**

L.       <u>All Available Evidence Need Not be Produced</u>

The law does not require any party to call all witnesses who may have been present or who may have some knowledge of the matter at issue in this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case. You must decide this case based on the evidence as specified in these instructions.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified).

## II.    STATEMENT OF THE CASE

A.    Clara Finch Cruz, M.D.'s Statement of the Case

Dr. Clara Finch Cruz was employed with the Department of Veterans Affairs from 2005 until her involuntary retirement in lieu of termination on March 16, 2018.   Dr. Finch Cruz worked at the VA New Jersey as Chief of Pathology and Laboratory Medicine Service from 2005 until approximately 2011 or 2012.  She then served as Lead Pathologist for the VISN 3 network until mid-2013, when she left to become Chief of Pathology and Laboratory Medicine Service (PLMS) at the VA Medical Center in Memphis (VAMC Memphis).  Dr. Finch Cruz found PLMS at VAMC Memphis to be understaffed, in need of many improvements, and suffering from morale problems. Dr. Finch Cruz immediately began working on improving the PLMS. The PLMS had been reviewed by CAP in 2013, receiving 41 deficiencies, and by the next review by CAP in 2015, there were only 7 deficiencies. Dr. Finch Cruz worked to improve PLMS in her role as Chief of PLMS until she was removed from her position as Chief of Service by Dr. Thomas Ferguson on February 1, 2017.  While Dr. Finch Cruz had not had any issues with Dr. Christopher Marino, Chief of Staff who recruited her and retired December 31, 2016, she immediately began experiencing problems with Dr. Ferguson who was Acting Chief of Staff beginning in January 2017.

Dr. Finch Cruz had some medical issues in 2016. In September 2016, while out having a surgical procedure, Dr. Finch Cruz learned she had breast cancer.  Dr. Finch Cruz notified her supervisor, Dr. Marino, and took the time necessary for the initial treatment of the breast cancer.  Dr. Finch Cruz had surgery as part of the treatment of her breast cancer on November 11, 2016.  Following surgery, Dr. Finch Cruz was in and out of work with follow up care.  While working remotely in December 2016, Dr. Finch Cruz was tasked with recruitment for PLMS to help address the vacancies that had persisted as problems since before Dr. Finch Cruz became Chief of PLMS. Dr. Marino assigned Dr. Finch Cruz

to work directly with Dr. Ferguson to fill certain positions. Dr. Finch Cruz also had a conference she was attending as part of her duties for a week in December. Due to Dr. Finch Cruz' prolonged absence from work in late 2016, Dr. Eugene Pearlman served as Acting Chief of PLMS until after the new year in January 2017.

When Dr. Finch Cruz returned to work on January 9, 2017, she requested a meeting with Dr. Ferguson to discuss recruitment and health issues. During the meeting on January 12, 2016, Dr. Finch Cruz discussed her health and completing treatment in the coming months for breast cancer. During that meeting, Dr. Ferguson responded to Dr. Finch Cruz' health issues by asking her to step down from her post as Chief of PLMS and telling her that his mother suffered from an illness and that he felt that she should not have been working with her serious illness. Dr. Finch Cruz did not agree to step down.

During the next meeting Dr. Finch Cruz had with Dr. Ferguson, on January 20, 2017, he again asked Dr. Finch Cruz to step down and showed her a letter from the Tumor Board that indicated some issues with PLMS and a backlog from 2016. Dr. Ferguson told Dr. Finch Cruz that if she stepped down as Chief of PLMS, the letter would go no further, but if she refused, then they would look further into the situation.  Dr. Ferguson gave her until January 23, 2017, to respond to his request.  Dr. Finch Cruz left the meeting and immediately began to look into the backlog that Dr. Ferguson referenced with the letter he showed to her, but did not give to her.

Dr. Finch Cruz and her Lab Manager, Zaida Rivera-Correa, found an issue with the lab reports done in December not showing in VistA. After investigation, Dr. Finch Cruz and Ms. Rivera found 123 cases needing reports to the provider who ordered them, but only 5 cases needed actual testing; and they were sent to other facilities for testing.  The other 118 cases had results, but due to a computer glitch or error, these were not showing up in VistA. Dr. Finch Cruz reported to Dr. Ferguson and others

what she and Ms. Rivera found and how they addressed it. The backlog of cases was from December 2016 while Dr. Finch Cruz was out and Dr. Pearlman was Acting Chief of PLMS.

On January 23, 2017, Dr. Ferguson asked Dr. Finch Cruz if she was able to come to a decision. On the same day, Dr. Finch Cruz emailed Dr. Ferguson a Memo with the subject: Breast Cancer-Decline to Step Down and that she would retain an attorney to protect her rights which she did. Dr. Finch Cruz then emailed the memorandum to VAMC Memphis and VISN 9 leadership. On January 31, 2017, Lora Kirk sent an email to Cheryl Brewer regarding Dr. Finch Cruz' memo outlining the reasons behind the 123specimen backlog from December 2016 because Ferguson was going to discriminate and retaliate against Dr. Finch Cruz because of her breast cancer and refusal to step down as Chief of PLMS.

On February 1, 2017, Dr. Ferguson detailed Dr. Finch Cruz out of her Pathology and Laboratory Medicine Service Chief position. Thereafter, Ferguson instituted a fact finding into Dr. Finch Cruz with no specified basis for examining her performance as she had received only "Excellent," "Good," and "Fully Successful" performance ratings and Dr. Ferguson had been her supervisor for less than a month. David Wood sent out a bulletin on February 8, 2017, that Dr. Eugene Pearlman, a white male, would be Acting Chief of PLMS.  Dr. Pearlman is now Chief of PLMS. Following her removal as Chief of PLMS, Dr. Finch Cruz learned of VAMC Memphis receiving top laboratory (1a) in VISN9, which she passed on to Dr. Pearlman and Dr. Ferguson.

Dr. Ferguson began soliciting reviews of PLMS at VAMC Memphis as soon as he detailed Dr. Finch Cruz into a different position, one that was not on the organization chart, and which also changed her from a Tier 3 as Chief of Service to a Tier 2 employee affecting her pay scale.  On March 10, 2017, Mickie McClain, with VISN9, replied to Ferguson's solicitation of reviews of PLMS, praising Dr. Finch Cruz' work and noting that it was amazing with the number of vacancies at VAMC Memphis.

The vacancies had been an ongoing issue since Dr. Finch Cruz arrived and she had just received some funding to fill vacancies in 2016, which she was working on with Dr. Ferguson before and while on leave for breast cancer in 2016.

On March 24, 2017, Dr. Ferguson, still not in possession of the results of the Fact Finding he ordered, told James Belmont, Acting Director of VAMC Memphis, that he was going to recommend an AIB.  On April 13, 2017, Dr. Ferguson wrote Elizabeth Hill with VA Central Office, sending her the Fact Finding and told her that he could move forward with a suspension of privileges without an AIB because of the strength of the Fact Finding. Dr. Ferguson told Hill that "full disclosure" the employee, Dr. Finch Cruz, had an EEO against him for discrimination. Dr. Ferguson also told Hill that the previous Chief of Staff always gave Dr. Finch Cruz either fully satisfactory or better performance evaluations.  Hill told Dr. Ferguson that there was not enough evidence to recommend a suspension or revocation of privileges.

In April 2017, Dr. Ferguson had reduced the approved performance pay for Dr. Finch Cruz for FY2016 that Dr. Marino had set at 80-85% down to 70%.  Dr. Ferguson also sent an email out on April 3, 2017, advising the Credentialing Committee to not grant privileges to anyone who does not have their OPPEs.  On April 28, 2017, Dr. Finch Cruz' administrative assistant informed Dr. Finch Cruz that her OPPEs were missing. These documents had been maintained by the Chief of Staff's office. On May 8, 2017, Dr. Ferguson wrote Sharon O'Mearns that he thought it would "be best" to have James Belmont to sign off on the AIB into Dr. Finch Cruz before he left and the new Medical Center Director David Dunning came later in May. Dr. Ferguson knew that he'd been told by Central Office that he did not have enough evidence to do what he wanted, which was to suspend or revoke Dr. Finch Cruz' privileges. He did not have enough evidence because there was not any evidence that Dr. Finch Cruz

23

had done anything wrong. To achieve his goal to remove Dr. Finch Cruz because she filed an EEO on him, Dr. Ferguson had to keep trying to find something that would justify removing her.

On May 23, 2017, Dr. Ferguson confirmed giving raises to the PLMS pathologists except for Dr. Finch Cruz, the others being all male.  Dr. Finch did not confirm her credentials being renewed until the beginning of June due to the delays caused by her conveniently missing OPPEs. Dr. Finch Cruz notified the Defendant that she considered the issue regarding the credentialing delays to be reprisal by Dr. Ferguson because Dr. Finch Cruz filed an EEO complaint against him.  Dr. Ferguson continued to look for reasons to be rid of Dr. Finch Cruz, altogether.  On June 4, 2017, Dr. Ferguson requested a master key to the lab because he could not get into the core lab.  There would be no reason for Dr. Ferguson to access the core lab as Chief of Staff.  The Chief of PLMS would be the one to have said access. Shortly after Dr. Ferguson is given a master key to the core lab, Defendant convened an AIB into Dr. Finch Cruz. One of the pieces of evidence Dr. Ferguson purports to have to support his claims that Dr. Finch Cruz had somehow acted in such an inferior manner as Chief of PLMS, that termination was the only option.

On August 4, 2017, David Dunning convened an AIB for Dr. Finch Cruz based on Ferguson's recommendation.  The AIB was not timely conducted and failed to adhere to Handbook 0700 and the Privacy Act. The report was not issued until November 29, 2017.  The AIB should have concluded within 45-60 days of it being convened.  The AIB was poorly handled with no set purpose or scope specified.  Dr. Finch Cruz was given a memorandum to appear to give testimony at the AIB as a "witness" and did not indicate what she was a witness to.  When she arrived to give testimony, she was informed by the Chairperson of the AIB, Scotte Hartronft, that the AIB had been convened to investigate allegations of neglect of service by Dr. Finch Cruz.  The questions spanned the entire length of Dr. Finch Cruz' tenure at VAMC Memphis, even the interview process before she arrived. Dr. Finch

Cruz had no documentation or other information to assist her as the subject of the AIB. The documents and information that could have assisted her was in the custody and control of Dr. Ferguson.

Following the testimony in the AIB, Scotte Hartronft made multiple attempts to locate evidence to support Dr. Ferguson's contention that Dr. Finch Cruz neglected the PLMS Service. On October 12, 2017, Dr. Ferguson emailed O'Mearns that he had given Hartronft everything that he had. On October 16, 2017, Hartronft emailed Director Dunning, indicating that he did not like to bother directors when conducting an AIB, but Hartronft was having a hard time tracking down evidence of allegations made by Dr. Ferguson against Dr. Finch Cruz. In response to Hartronft, Dr. Ferguson told him and Director Dunning that the photographs he alleged were the result of Dr. Finch Cruz' neglect were taken by him and on his phone, time stamped for February 8, 2017. To date, there is no such time stamped photos; apparently Dr. Ferguson has lost that phone. The photos that Dr. Ferguson allegedly took on February 8, 2017, have only been produced with Dr. Ferguson's testimony to support when taken. Hartronft continued to look for any evidence to support the claim by Ferguson that there were unprocessed specimens on February 8, 2017. Ferguson told Hartronft that he reported the unprocessed specimens verbally. Ferguson finally sent an email to Hartronft on November 29, 2017, indicating that it was Dr. Finch Cruz' response to the unprocessed specimens he had taken photos of on February 8, 2017. Hartronft prepared his report on AIB on November 29, 2017, full of speculation and unverified facts, well after the time had passed for concluding the AIB.

The email that Ferguson sent to Hartronft on November 29, 2017, was a fabrication. The email purported to be Dr. Finch Cruz' response to the unprocessed specimens allegedly found in February 2017 was actually Dr. Finch Cruz' update on the backlog of specimens she and Ms. Rivera had discovered following Dr. Finch Cruz' meeting with Ferguson on January 20, 2017. Based on the AIB report, on February 23, 2018, Dr. Ferguson recommended that Dr. Finch Cruz be removed as a federal

employee and that she be reported to the Board to have her license to practice medicine removed, despite knowing that the AIB was based on and contained false and misleading information.

On January 26, 2018, Dr. Finch Cruz received an Outstanding Performance Appraisal from her direct supervisor, Acting Chief of PLMS, Eugene Pearlman, MD. On February 9, 2018, Dr. Finch Cruz met with Dr. Pearlman to review the goals set for FY2017. Dr. Pearlman indicated that Dr. Finch Cruz met all of her goals and set her Performance Pay for FY2017 at 100%, warranting the full $15,000.00 that she was eligible to receive. Despite Dr. Pearlman's ratings of Dr. Finch Cruz, Dr. Ferguson moved forward with removal of Dr. Finch Cruz for alleged performance deficiencies. Dr. Finch Cruz wrote Director Dunning to protest her removal as retaliatory and discriminatory and unsupported by evidence. Director Dunning discharged Dr. Finch Cruz from federal employment, but did not recommend any action on her license. Director Dunning notified Dr. Finch Cruz by letter dated March 8, 2018. The next day, Dr. Ferguson arbitrarily and with animus, directed that Dr. Finch Cruz be locked out of access to the VA system. Dr. Finch Cruz was given temporary access, which did not provide her access to the work she had been performing and was still responsible for through her termination date of March 16, 2018. On March 16, 2018, Dr. Finch Cruz elected to involuntarily retire in order to maintain her health insurance as she still is required to see her doctor for breast cancer.

Also, on March 16, 2018, Dr. Ferguson notified Dr. Finch Cruz through Atiba Alexander that she had a Performance Pay form to sign. Mr. Alexander included the form with the email. Instead of the recommended performance pay awarded by her direct supervisor, Dr. Pearlman, Dr. Ferguson did a separate form, containing information not related to Dr. Finch Cruz, even having her Tier wrong, that was for 50% of $15,000.00 or $7,500. Dr. Finch Cruz refused to sign the form sent to her by Ferguson as it is falsified and was never reviewed with her as required by VA policy.

VAMC Memphis discriminated and retaliated against Dr. Finch Cruz from January 2017 until she was finally forced to retire in March 2018.  Dr. Finch Cruz has lost out on valuable benefits and pay as a result of the Defendant's actions. Dr. Finch Cruz has retained an expert to calculate her damages in this matter as to wage loss and benefits. Based on the expert report of Robert Vance, Dr. Finch Cruz has lost $1,394,000.00 in wages and benefits. This matter has been very stressful and emotional for Dr. Finch Cruz.  Dr. Finch Cruz seeks an amount for compensatory damages to be determined by a jury, but not less than $300,000.00.

B.   <u>Robert Wilkie, Secretary, U.S. Department of Veterans Affairs' Statement of the Case</u>

Plaintiff cannot produce evidence sufficient to make a *prima facie* case for disability and sex (gender) discrimination, hostile work environment or retaliation for engaging in prior EEO activity. Nor can the Plaintiff rebut the Defendant's legitimate reasons for its actions.

The Defendant contends that the Plaintiff cannot establish a *prima facie* case of discrimination based on Plaintiff's disability (breast cancer),and  sex (female) when in January 2017, Chief of Staff Dr. Ferguson allegedly stated that Plaintiff should not work while being treated for breast cancer and allegedly threatened to remove Plaintiff from her position as the Chief of Pathology and Laboratory Medicine Services.  Defendant contends that Plaintiff was not subjected to an adverse employment action or treated differently from similarly situated persons outside her protected classes because of her disability or sex.

Defendant contends that Dr. Ferguson denied he ever made the comment to Plaintiff that she should not work while being treated for a medical condition.  Nor did Dr. Ferguson threaten Plaintiff with removal.  Defendant contends that Dr. Ferguson only discussed with Plaintiff that his mother, who had also been diagnosed with a serious illness, refused to take off work to care for herself.  He advised Plaintiff to take the time she needed to take care of herself.

Defendant further contends that Dr. Ferguson made no threat of removal to Plaintiff.  On January 20, 2017, he discussed Plaintiff's serious performance issues regarding lab specimens, including the failure of her service to process over a hundred plus cancer specimens.  It was then that Dr. Ferguson advised Plaintiff that there would have to be a fact-finding inquiry into her failures as the Chief of Pathology and Laboratory Medicine Service.  Defendant contends that the fact-finding was charged with determining if there had been a failure by Plaintiff to produce sustained plans from multiple site visits alleging noncompliance with safety, failure to meet hazardous materials handling

28

standards, and failure to meet standards of care.  Defendant contends that Dr. Ferguson was responsible for convening a fact-finding investigation.  However, the investigation can only be conducted by the Medical Center Director.  Defendant contends that Dr. Ferguson convened that fact-finding upon the advice of Human Resources when the Pathology backlog and specimen issues were discovered.

Defendant contends that after the discussion about these performance issues, Plaintiff herself asked Dr. Ferguson if there would still be a cause for a fact-finding investigation if she stepped out of her position as Service Chief and into another role.  Defendant contends that after Plaintiff made this suggestion, Dr. Ferguson asked her for a decision regarding what she decided to do.  When he did not receive a response from her, he did later send an email to ask for her decision to step down as Service Chief.

Defendant contends that Plaintiff failed to establish that Defendant failed to provide her with reasonable accommodation with regard to her work schedule.  Defendant contends that Plaintiff only requested she be allowed time off for treatment from January 16, 2017 through February 14, 2017.  Defendant contends that Plaintiff did not request a change to her tour of duty, but rather the ability to use leave.  Defendant also contends that there is no evidence that any request for leave was denied.

Defendant contends that Plaintiff cannot rebut the Defendant's legitimate reasons for its actions, particularly (1) for detailing Plaintiff from her positions as Service Chief, (2) for conducting a fact-finding investigation, (3) for requiring Plaintiff to appear before an Administrative Investigation Board (AIB), and (4) for proposing Plaintiff's removal.

Defendant contends that Dr. Ferguson met with Plaintiff on January 12, 2017, at which time Plaintiff advised him that she had breast cancer.  Defendant contends that during that same meeting, Dr. Ferguson advised Plaintiff that he had received word that the Gastrointestinal Tumor Board and

Chief of Medicine were drafting a formal complaint regarding processing time for cancer specimens and that if true, the Pathology Lab was not meeting the College of Anatomic Pathology (CAP) standards.  Defendant contends that Dr. Ferguson asked Plaintiff to research the allegations and to follow up on this issue with him on January 20, 2017.  Dr. Ferguson maintains that during the meeting of January 20, 2017, he and Plaintiff discussed her serious performance issues regarding the specimens.

Defendant contends that on January 18, 2017, the Tumor Board officially complained that pathology reports were of poor quality and that the turnaround time was in excess of thirty (30) days, despite the fact that the community standard is three (3) days.  As a result of the complaint, Defendant contends that Dr. Ferguson advised Plaintiff that it would be necessary to conduct a fact-finding inquiry into the complaint and the issues alleged.  Defendant contends that Plaintiff was not demoted, nor was she changed from a Tier 3 position to a Tier 2 position, as she alleges.  Although Plaintiff was not demoted, Defendant contends that she was temporarily reassigned to Tier 2 duties pending the outcome of the fact-finding inquiry and subsequent Administrative Investigatory Board (AIB) proceedings.

Defendant contends that Plaintiff received her within grade increase for Fiscal Year 2016.  There was no change in Plaintiff's grade or position.  Defendant contends that Plaintiff received her full salary and full locality pay for Fiscal year 2016.  Plaintiff did not, however, receive her full pay per performance because she did not meet all of her performance targets for that year.  Defendant contends that the Medical Director cosigned the performance pay recommendation forms.  Defendant also contends that Plaintiff did know of the reason, as she is required to sign the performance sheet.  Further, Defendant contends that there is documentation of Plaintiff's performance pay for several years.  The documentation reflects that Plaintiff received $12,750.00 in performance pay for the years 2013 and 2014.  She received $12,000.00 for 2015 and she received $10,500.00 for 2016, the year in which the deficiencies were discovered in the Pathology Lab.  Defendant contends that contrary to Plaintiff's

30

allegation that she did not know why her performance pay was lower in 2016 than in any other year, each performance pay is assessed based on one's performance.  Defendant contends that Plaintiff was the Chief of Pathology during that time period, and because of the complaints regarding the delay in processing of specimens in the Pathology Lab during 2016, her pay for performance was reduced.

Defendant contends that Dr. Ferguson became the Chief of Staff in March 2017 and was made aware the end of Fiscal Year 2016 Ongoing Professional Performance Evaluations (OPPEs) was due. Defendant contends that the OPPE must be compiled by a peer, in Plaintiff's case it had to be completed by a Pathologist.  Defendant contends that Dr. Ferguson is an internist, so the Acting Chief of Pathology completed Plaintiff's OPPE for Fiscal Year 2016.   Defendant contends that contrary to Plaintiff's allegation that three were missing from her file, Dr. Ferguson was only aware of one that was missing and that was for the second 6 months of Fiscal Year 2016, which had not been completed at the direction of his predecessor, Dr. Marino.   Defendant contends that since Plaintiff's OPPE was overdue, the Acting Chief of Pathology was asked, as a peer of Plaintiff, by the Administrative Assistant for pathology to complete the OPPE so it could be sent promptly to the Credentialing Committee to get Plaintiff credentialed immediately.  Defendant contends that the Acting Chief of Pathology completed Plaintiff's OPPE so she could be re-credentialed.   Defendant contends that Dr. Ferguson never implemented any new rule regarding credentialing being delayed if OPPEs were missing from one's file.  Dr. Ferguson maintains that OPPEs were always required to be on file prior to the renewing of credentials.  Defendant contends that it is well established that OPPEs have always been a required VHA mandated part of the credentialing process for all physicians; the Plaintiff's claim that Dr. Ferguson implemented a new rule is false.  Defendant contends that Dr. Ferguson was also not aware of Plaintiff's credentials ever being suspended and there is no record of a break in Plaintiff's credentials

31

since she began employment.  Defendant further contends that Dr. Ferguson checked in with the Medical Staff Coordinator for Credentialing to verify that Plaintiff's credentials were never suspended.

Defendant contends contrary to Plaintiff's allegation, Dr. Ferguson did not conduct an unprecedented mock Joint Commission/Office of Inspector General Investigation into Plaintiff's service line.  This type of inspection is routine and the entire quality management department was involved.  Defendant contends that the Memphis VA Health Care System pays a consulting firm to conduct reviews for Joint Commission readiness.

Defendant contends that an email was sent by the Resident Chief to Plaintiff and others on May 2, 2017 regarding mandating that only physicians and not residents/interns could transport specimens. Defendant contends that he pointed out that such a mandate was an explicit violation of the Accreditation Council for Graduate Medical Education (ACGME) rules.  Defendant contends in a string of emails, the Resident Chief advised that one of his interns had been advised by a charge nurse that per VA policy only physicians, not interns or residents, could transport patient specimens to the lab.  Defendant contends that the Resident Chief asked if a new policy had been implemented; he asked that if no new policy had been implemented, the nursing supervisors should be advised to their misunderstanding of policy.  Defendant contends that the Resident Chief was advised that the lab had issued a new policy regarding specimens and that he should contact the Director of the Lab for further information.  Defendant contends that in response to that email, the Resident Chief sent an email, including Plaintiff, advising that if the policy had been changed so that only MDs could transport specimens, that was a violation of ACGME rules and that the violation would be reported.  Defendant contends that the Resident Chief suggested in the future that any suggested policy changes should be discussed with the medicine department.

The Defendant contends that the convening of the AIB or any charges was not based on Plaintiff's sex (gender), disability, or EEO activity.  The Defendant contends that the Medical Center Director is the individual who signed Plaintiff's AIB appointment letter.  The Defendant contends that the Plaintiff was the subject of the complaint which was based on numerous irregularities, mismanagement, and failure to oversee operations within the Pathology Service that potentially led to patient harm.  The Defendant contends that the allegations were substantiated and that in addition, there were two additional charges of Plaintiff's lack of candor during the AIB.  Defendant contends that three (3) other physicians who were not subjected to AIBs because two of those doctors were terminated for failure to lead and no AIB was required. Further, the third doctor was to be removed, but retired before removal proceedings began.

The Defendant contends that the President of the AIB was the Chief of Staff of the Greater Los Angeles Health Care System.  Defendant contends that the President of the AIB advised that the Risk Manager of the Memphis VA Health Care System handled the administrative aspects of the AIB, so she would have been the person sending the notice letter to Plaintiff.  Defendant contends by the time the AIB was conducted in September 2017, Plaintiff was well aware of the fact that the irregularities regarding lab specimens was of legitimate concern to the agency.  Defendant contents that Plaintiff was the Chief of Pathology during the time these irregularities occurred.  It is disingenuous for her to claim that she was unaware of the fact that her actions as Chief of the Service were being investigated.

Defendant contends that Plaintiff cannot establish a *prima facie* case of retaliation.  Defendant contends that Plaintiff cannot show that there is a causal connection between Plaintiff's prior protected activity and the adverse action.

Defendant contends that there is no evidence that the AIB failed to accommodate Plaintiff with regard to her testimony scheduled for September 26, 2017. Defendant contends that although Plaintiff requested that she be allowed to continue her testimony on September 27, 2017, due to her medical appointment on the afternoon of September 26, 2017, the AIB instead offered her an alternative accommodation when they advised her that she could come in at noon on September 26, 2017 or could return after her appointment to resume testimony. Defendant contends that Plaintiff never made the members of the AIB aware of the fact that she thought the timing would be a violation of her reasonable accommodation. Defendant contends that the President of the AIB was to be present at the Memphis VA Health care System for the AIB on September 25 and 26, 2017; he works for the Greater Los Angeles Health Care System, not the Memphis VA Health Care System. Defendant further contends that the AIB did, in fact, accommodate Plaintiff when they changed her interview time to accommodate her medical appointment scheduled for the afternoon of September 26, 2017. Defendant contends that the AIB did not failed to provide Plaintiff with a reasonable accommodation for her disability.

The Defendant contends that it issued Plaintiff's notice of removal based on two charges: (1) failure to correct laboratory deficiencies and (2) failure to lead effectively the Pathology and Laboratory Medicine Services. Defendant contends that the Agency decided to sustain these charges, removing Plaintiff from her position, effective March 16, 2018. Defendant contends that in reaching this decision, the Agency considered the following: Plaintiff's written reply, years of service and past work record; the "aggravating factors noted in the AIB's findings; the seriousness of the charges; and the absence of any mitigating or extenuating circumstances that would have justified mitigation of the proposed penalty. The Defendant contends that as a result of the Agency's decision to sustain the Notice of Proposed Removal, which terminated Plaintiff's employment, she no longer had access to the facility's computer systems. Defendant contends that the Assistance HR Officer requested that the

34

Administrative Assistant take appropriate steps to extend Plaintiff's computer access to March 18, 2018 because her removal was not effective until this date.

Defendant contends that it approved Plaintiff for a cash award for her performance covering the period of FY 2017.  Defendant contends that Plaintiff qualified for a cash award for this period because she met the standards and criteria to receive such an award, meeting three (3) out of five (5) performance targets.  However, Defendant contents that the findings of the AIB and NPR, culminating in the decision to remove Plaintiff from her position, were unrelated to Plaintiff's eligibility for a performance award because eligibility was solely based on meeting specific performance metrics. Defendant contends that Plaintiff received her performance award.

Defendant contends that Plaintiff cannot show that the Defendant deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee actually quit.

Defendant contends that none of Plaintiff's claims rise to the level of conduct that is sufficiently severe or pervasive to constitute an unlawful hostile work environment.  Rather, they appear to be common workplace incidents where management appropriately attempted to resolve issues with Plaintiff's performance.

**Proposed Instruction No. 15**

C.     Stipulations

Stipulations are facts all parties have agreed to.  You must take the stipulations as true.

In this case the parties have stipulated to the following:

The Parties stipulate to the following facts:

1.  Dr. Finch Cruz is a female.

2.  Dr. Finch Cruz had breast cancer.

3.  On July 14, 2013, Dr. Finch Cruz began as Chief of Pathology and Laboratory Medicine Service as a Grade 15, Tier 3.

4.  On July 21, 2015, Dr. Finch Cruz Performance Rating was Excellent by Chief of Staff, Dr. Christopher Marino.

5.  On October 22, 2015, Mickie McClain congratulated Dr. Finch Cruz on an awesome inspection and getting the deficiencies greatly reduced.

6.  On January 6, 2016, Dr. Finch Cruz' Performance Rating was Excellent by Chief of Staff, Dr. Marino.

7.  On December 8, 2016, Dr. Finch Cruz' Performance Rating was Fully Successful by Chief of Staff, Dr. Marino.

8.  Dr. Finch Cruz replaced an Acting Chief of Service who had been there for 5-6 years.

9.  From 2014-2018, Dr. Finch Cruz performance evaluations were either excellent or fully successful.

10. Dr. Finch Cruz was diagnosed with breast cancer on October 4, 2016.

11. On January 9, 2017, Dr. Finch Cruz sent a meeting invite with her supervisor Dr.

Ferguson to discuss recruitment and Health Issues.

12. On January 12, 2017, Dr. Finch Cruz and Dr. Ferguson met.

13. On January 13, 2017, Dr. Finch Cruz sent a meeting invite to follow up on health issues and CAP, with meeting set for January 20, 2017.

14. On January 16, 2017, Dr. Finch Cruz sent a Tour of Duty and Treatment Schedule from January 16, 2017 to February 14, 2017 to Dr. Ferguson.

15. On January 20, 2017, Dr. Finch Cruz and Dr. Ferguson had a meeting.

16. On January 23, 2017, Dr. Finch Cruz sent Dr. Ferguson an email stating she is declining to step down as Chief of Service.

17. On January 23, 2017, Dr. Finch Cruz sent to Dr. Ferguson, Scott, Woods, Kaufman and Hayes her memo of declining to step down as Chief of Service.

18. On January 24, 2017, Dr. Finch Cruz sent Dr. Ferguson an update on Memphis Pathology Delay stating that the total number of cases affected was 123 and the number of unverified consultations cases was 5.

19. On January 25, 2017, Dr. Finch Cruz emailed Dr. Ferguson a summary of events leading to the Pathology backlog. Dr. Finch Cruz stated the unverified 5 cases would be sent to Lexington VAMC for consultation.

20. On January 25, 2017, the Lab Manager Rivera-Correa sent a second update on the Pathology backlog to Dr. Ferguson.

21. On January 29, 2017, Dr. Ferguson emailed Lora Kirk advising that the detail should contain information that she will be relocated with no change in pay pending a fact finding which may lead to an Administrative Investigation Board.

22. On January 29, 2017, Dr. Ferguson emailed Lora Kirk stating that he wanted to get

this exactly right as Dr. Finch Cruz is likely to file both an EEO and a lawsuit.

23. On February 1, 2017, Dr. Finch Cruz was informed that an Administrative Fact Finding would be conducted.

24. On February 1, 2017, Dr. Finch Cruz was informed that her supervisor would be Dr. Eugene Pearlman.

25. On February 8, 2017, a Bulletin went out at the VAMC that Dr. Pearlman (WM) would be the Acting Chief.

26. On February 9, 2017, Office of Resolution Management notified VAMC acting director, David Wood of Dr. Finch Cruz's Informal Counseling Case.

27. On February 16, 2017, Dr. Finch Cruz emailed Dr. Pearlman and Dr. Ferguson a memo stating that VAMC was the Top Laboratory (Group 1a) in VISN 9 for FY2016.

28. On February 16, 2017, Dr. Finch Cruz's counsel sent Dr. Ferguson a response to his February 1, 2017 detail memo stating the memo was too vague and asking for more information.

29. On February 21, 2017, Dr. Pearlman delegates Dr. Finch Cruz to Community Based Outpatient Center (CBOC).

30. On February 24, 2017, Dr. Ferguson Recommends an AIB.

31. On March 20, 2017, Mickie McClain wrote Dr. Ferguson and VISN 9 stating that it was remarkable that the VAMC Lab was doing as well as they are with 23 vacancies.

32. On March 24, 2017, Dr. Ferguson stated that he was going to recommend an AIB.

33. On March 28, 2017, Dr. Finch Cruz forward her response to Austin.

34. On May 4, 2017, Dr. Pearlman completes OPPEs for Dr. Finch Cruz.

35. On May 8, 2017, Dr. Ferguson emails Sharon O'Mearns that it would be best if Mr. Belmont could sign off on the AIB before he goes.

36. On May 11, 2017, Dr. Finch Cruz filed a Formal EEO Complaint alleging: sex (female), race (Hispanic), National Origin (Puerto Rican), Disability (Breast Cancer), reprisal and hostile work environment.

37. On May 23, 2017, Dr. Ferguson approves giving all pathologist (all male) a raise except Dr. Finch Cruz.

38. On May 25, 2017, VA ORM sent acceptance of EEO complaint.

39. On June 4, 2017, Dr. Ferguson requests a grand master key to the laboratory from Mr. Logan.

40. On July 19, 2017, Dr. Zafar sends an email to Dr. Pearlman and Dr. Ferguson about the Commercial Appeal's showcase of Lab Service at Nonconnah CBOC- Memphis.

41. On August 4, 2017, David Dunning sent a memo convening an Administrative Investigation Board (AIB) against Dr. Finch Cruz the first meeting was set for August 14, 2017 and it was to be completed by September 29, 2017.

42. On August 14, 2017, there was no first meeting for the AIB. (Dr. Ferguson's Deposition Ex. 86)

43. On August 24, 2017, Dr. Ferguson emails O'Mearns stating that the AIB can consist of 2 people.

44. On September 11, 2017, Burnside ask Ferguson for pictures, reports and findings on Dr. Finch Cruz.

45. On September 12, 2017, Dr. Ferguson emailed Slate stating there would be serious egg if no AIB.

46. On September 25, 2017, Dr. Ferguson testifies at AIB. Dr. Ferguson's Deposition

47. On October 16, 2017, Dr. Ferguson emails Dr. Hartronft pictures of the lab stating

he took the pictures of unprocessed carts on February 8, 2017.

48. On November 20, 2017, O'Mearns emails Dr. Ferguson questioning whether January 2017 occurrence and the February 2017 occurrence the same incident or separate when she is searching for Issue Briefs.

49. On November 22, 2017, Dr. Ferguson emailed Hornes stating that Dr. Finch Cruz did not request a change of tour.

50. Dr. Ferguson took two pictures of laboratory specimens.

51. On November 26, 2017, Dr. Ferguson sent Dr. Hartronft the cart pictures and told him that he did not think an Issue Brief was written.

52. On November 28, 2017, O'Mearns emails Dr. Ferguson asking if there was any Issue Briefs for February 2017.

53. On November 28, 2017, Dr. Ferguson asked Arleen Foster to check again for Issue Briefs for February 2017 via email.

54. On November 28, 2017, Foster states she found an Issue Brief found in March 2017 with contact information for Dr. Ferguson if there are any questions about the Issue Brief.

55. On November 29, 2017, O'Mearns emailed Dr. Dunning advising him that the VA need a better system tracking Issue Briefs.

56. On November 29, 2017, Dr. Ferguson emailed Dr. Hartronft forwarding the Dr. Finch Cruz email. Dr. Ferguson stated that this is Dr. Finch Cruz's own words about the 123 samples on the carts.

57. On November 29, 2017, Final AIB report is issued.

58. On December 4, 2017, Dr. Ferguson requested an editable version of the AIB from O'Mearns.

59. On December 22, 2017, Dr. Ferguson drafts the removal of Dr. Finch Cruz.

60. On January 26, 2018, Dr. Finch Cruz' Performance Rating was Outstanding by Acting Chief of Pathology and Laboratory Medicine Service, Dr. Pearlman.

61. On February 23, 2018, Dr. Finch Cruz was issued a notice of Proposed Removal signed by Dr. Ferguson that was sustained, effective, March 16, 2018.

62. On March 8, 2018, Dr. Finch Cruz receives Dunning discharge letter.

63. Dr. Ferguson said that Dr. Finch Cruz was given no other option than termination.

64. On March 9, 2018, Dr. Finch Cruz computer access was deactivated.

65. On March 15, 2018, Dr. Finch Cruz was retired in lieu of termination.

66. Cancer is a disability under the law. 29 C.F.R. § 1630.2

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Wheeler v. Memphis/Shelby County Health Dept.*, No. 00-2616.

### III.   APPLICABLE LAW

**Proposed Instruction No. 16**

A.      Legal Theories of the Case

Turning now to the legal theories in the case, it is my duty to tell you what the law is.  It is your duty to determine what the facts are and after you have determined what the facts are, to apply the law to those facts, free from any bias, prejudice, or sympathy.  If a lawyer or party has told you that the law is different from what I tell you it is, you must, of course, take the law as I give it to you.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified).

**Proposed Instruction No. 17**

B.  Specific Claims – Privacy Act – Title VII and Rehabilitation Act

Dr. Finch Cruz is making claims that her rights were violated under three different laws. Plaintiff is making a claim that her rights under the Privacy Act were violated.  The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of information concerning individuals. The Act attempts to strike a balance between the government's need to collect and maintain information and the privacy interests of the persons to whom such information pertains.

In this case, the Plaintiff also makes various claims under the Rehabilitation Act which prohibits employers from discriminating against their employees in the terms and conditions of their employment because of the employee's disability; and prohibits employers from retaliating against employees for seeking to enforce the employee's lawful rights under the Rehabilitation Act or opposing a practice made unlawful under the Rehabilitation Act.

Plaintiff also makes various claims under Title VII of the Federal Civil Rights Act which prohibits employers from discriminating against their employees in the terms and conditions of their employment because of the employee's gender, religion, race, color, age or national origin and prohibits employers from retaliating against employees for seeking to enforce the employee's lawful rights under Title VII or opposing a practice made unlawful under Title VII.

11th Circuit Pattern Jury Instructions No. 4.5 (2019); *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001); 5 U.S.C. § 552(a)

**Proposed Instruction No. 18**

Privacy Act: Section 552a(e)(2)

Dr. Finch Cruz brings a claim under the Privacy Act which says that the VA should collect information such as background facts and documents from the individual who is the subject of an inquiry or investigation when the information being collected in the investigation may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs.

The provision at issue is Section 552a(e)(2) of the Privacy Act, which provides:

> Each agency that maintains a system of records shall ... collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs.
>
> 5 U.S.C. § 552a(e)(2).

This provision has been interpreted to require agencies in some circumstances to seek information from the subject of an investigation before involving new witnesses.  (VA Handbook 0700, 4-1)

Section 552a(e)(2) "reflects congressional judgment that the best way to ensure accuracy in general is to require the agency to obtain information 'directly from the individual whenever practicable.' " *Waters v. Thornburgh,* 888 F.2d 870, 874 (D.C.Cir.1989) (quoting OMB Privacy Act Guidelines, 40 Fed.Reg. 28,949, 28,961 (July 9, 1975)).

Under the Privacy Act, an individual may bring a civil action against an agency that fails to comply with any provision of the Act "in such a way as to have an adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D).

Authority: *Cardamone v. Cohen*, 241 F.3d 520, 525 (6th Cir. 2001)

**Proposed Instruction No. 19**

The Privacy Act: Section 552a(e)(2) - Elements

In order for Dr. Finch Cruz to prevail in her claim of the Privacy Act violation she must prove by

the preponderance of the evidence that:

"(1) that defendant failed to elicit information about plaintiff 'to the greatest extent practicable
from plaintiff; (2) that the violation of the Act was intentional or willful; and (3) that
defendant's actions had an adverse impact on plaintiff." *Hudson,* 130 F.3d at 1205 (citing 5
U.S.C. §§ 552a€(2); 552a(g)(4); 552a(g)(1)(D)).

Authority: *Cardamone v. Cohen*, 241 F.3d 520, 525–26 (6th Cir. 2001)

**Proposed Instruction No. 20**

The Privacy Act: Section 552a(e)(2) "Greatest Extent Practicable

The first element we must consider is whether the VA failed to elicit information directly from Dr. Finch Cruz "to the greatest extent practicable." 5 U.S.C. § 552a(e)(2). The point of the "greatest extent practicable" provision "is not to give the agency the option of choosing which source—the subject of the investigation or some third party—would provide the most accurate information; rather, it reflects congressional judgment that the best way to ensure accuracy in general is to require the agency to obtain information 'directly from the individual whenever practicable.' "

The relevant inquiry under section 552a(e)(2) concerns, as it must, is the reasonableness of the investigator's decision to contact a third party viewed at the time it was made," *Id.*

The point of the provision, however, is not to give the agency the option of choosing which source—the subject of the investigation or some third party—would provide the most accurate information; rather, it reflects congressional judgment that the best way to ensure accuracy in general is to require the agency to obtain information "directly from the individual whenever practicable."

Authority: 5 U.S.C. § 552a(e)(2)*Waters, . Cardamone v. Cohen*, 241 F.3d 520, 526 (6th Cir. 2001)*Waters v. Thornburgh*, 888 F.2d 870, 874 (D.C. Cir. 1989), *abrogated by Doe v. Chao*, 540 U.S. 614 (2004) *see also* DOJ Regulations Implementing the Privacy Act of 1974, 28 C.F.R. § 16.57(b)(3).[7]

**Proposed Instruction No. 21**

Privacy Act :552a(e)(3)


Dr. Finch Cruz brings a second claim under § 552a(e)(3) of the Privacy Act which requires an agency to "inform each individual whom it asks to supply information ... [of] the principal purpose or purposes for which the information is intended to be used." 5 U.S.C. § 552a(e)(3).

To prevail on a claim arising under § 552a(e)(3), Dr. Finch Cruz must establish that (1) VA failed to notify the witnesses of the principal purpose of the investigation; (2) its actions had an adverse effect on Dr. Finch Cruz; and (3) it willfully or intentionally violated this provision of the Act. *See* 5 U.S.C. 552a(e)(3); 552a(g)(1)(D); 552a(g)(4). The district court granted summary judgment as to Cardamone's § 552a(e)(3) claim and concluded that the Privacy Act does not require that the results of the investigation be disclosed, merely the investigation's purpose.

Authority: *Cardamone v. Cohen*, 241 F.3d 520, 529 (6th Cir. 2001)

**Proposed Instruction No. 22**

Privacy Act: Section 552a - Intentional Willful


Instead, the court reiterated the "something greater than gross negligence" standard suggested by the House and Senate Compromise Amendments, *see Staff Analysis,* 120 Cong.Rec. at 40,405–06, and the "flagrant disregard of others' rights" standard articulated in *Albright II,* 732 F.2d at 189. Under either standard, the plaintiff had "certainly" raised a genuine issue of material fact about the VA's intent in making such an unsolicited disclosure. *Tijerina,* 821 F.2d at 799.


*Waters v. Thornburgh*, 888 F.2d 870, 876 (D.C. Cir. 1989), *abrogated by Doe v. Chao*, 540 U.S. 614 (2004)

**Proposed Instruction No. 23**

Privacy Act: Recovery


The "entitle[ment] to recovery" necessary to qualify for the $1,000 minimum is not shown merely by an intentional or willful violation of the Act producing some adverse effect. The statute guarantees $1,000 only to plaintiffs who have suffered some actual damages.[12]

Authority: *Doe v. Chao*, 540 U.S. 614, 627 (2004)

**Proposed Instruction No. 24**

Void Action

Where it is found that an adverse personnel action has been carried out in substantial violation of procedural regulations, it is a void action and the employee is entitled to recover any pay of which she has been illegally deprived.

Sources: *Vitarelli* v. *Seaton*, 359 U.S. 535 (1959); *Service* v. *Dulles*, 354 U.S. 363 (1957); *Leone* v. *United States*, 204 Ct. Cl. 334 (1974); *Jones* v. *United States*, 203 Ct. Cl. 544 (1974); *Hanifan* v. *United States*, 173 Ct. Cl. 1053, 354 F.2d 358 (1965). *Gratehouse v.United States*, 512 F.2d 1104, 1108 (Ct Cl. 1975)

**Proposed Instruction No. 25**

C.  The Rehabilitation Act

In this case, Plaintiff claims that Defendant discriminated against Plaintiff because she had a disability within the meaning of the Rehabilitation Act.  Defendant denies Plaintiff's claims. Under the Rehabilitation Act it is unlawful for an employer to take an adverse action because of a person's disability.

To prove her claim of discrimination based on her disability in violation of the Rehabilitation Act, Dr. Finch Cruz must prove all of the following five elements:

1.    She is disabled,

2.    She is otherwise qualified for the position, with or without reasonable accommodation,

3.    She suffered an adverse employment action,

4.    The VA knew or had reason to know of Dr. Finch Cruz' disability, and

5.    The position remained open while the employer sought other applicants or the disabled individual was replaced.

Authority: *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891–92 (6th Cir. 2016)

**Proposed Instruction No. 26**

D.  Disability and Major Life Activities

The first element of the Rehabilitation Act claim that Dr. Finch Cruz must prove that she has a disability under the Rehabilitation Act.

Under the Rehabilitation Act, the term "disability" with respect to an individual means either (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment whether or not the impairment limits or is perceived to limit a major life activity. Major life activities include the operation of a major bodily function, including but not limited to, functions of the immune system [and] normal cell growth.  Cancer will qualify as a disabling impairment in virtually all cases, since cancer substantially limits normal cell growth.

The negative side effects of medication or burdens associated with following a particular treatment regimen may be considered when determining whether an individual's impairment substantially limits a major life activity.

Authority:  29 C.F.R. § 1630.2(j)(3); 29 C.F.R. § 1630.2(j) (4)(ii); 42 U.S.C. § 12102(1); 42 U.S.C. § 12102(2)(A); 42 U.S.C.  § 12102(2)(B); 42 U.S.C. § 12102(4)(A); 29 CFR § 1630.2(j)(3)(ii); 29 CFR § 1630.2(j)(3)(iii); *Alston v. Park Pleasant, Inc.*, 679 Fed. Appx. 169, 171–72 (3d Cir. 2017)(unpublished); *Monce v. Marshall County Bd. of Educ.*, 307 F. Supp. 3d 805, 814–15 (M.D. Tenn. 2018).

**Proposed Instruction No. 27**

E.      Rehabilitation Act – Qualified Individual

In order for Dr. Finch Cruz to establish the second element of her Rehabilitation Act claim, that she is a qualified individual, she must prove by a preponderance of the evidence that:

1. She had the skill, experience, education, and other job-related requirements for the Service Chief of Pathology and Laboratory Medicine Service, and

2. She could do the job's essential functions either with or without accommodation.

In determining whether Dr. Finch Cruz could perform the essential functions as Service Chief of PLMS, you should keep in mind that not all job functions are "essential." Essential functions are a job's fundamental duties. In deciding whether a function is essential to Chief of PLMS, some factors you may consider include the following:

i)   The employer's judgment as to which functions are essential;

ii)  Written job descriptions;

iii) The amount of time spent on the job performing the function;

iv) The consequences of not requiring the incumbent to perform the function;

v)  The terms of a collective bargaining agreement;

vi) The work experience of past incumbents in the job; and/or

vii) The current work experience of incumbents in similar jobs.

No one factor is necessarily controlling.  You should consider all of the evidence in deciding whether Dr. Finch Cruz was able to perform the essential functions of her job.

Authority: 29 C.F.R. § 1630.2(n)(3) 42 U.S.C. § 12102; 42 U.S.C. § 12111; 42 U.S.C. § 12201; 29 C.F.R. § 1630.2 (2019); *id*. § 1630.3; *Green v. BakeMark USA, LLC*, 683 Fed. Appx. 486, 491–92 (6th Cir. 2017);

**Proposed Instruction No. 28**

F.      Rehabilitation Act – Adverse Employment Action

The third element of the Rehabilitation Act claim that Dr. Finch Cruz must prove is that she suffered an adverse employment action. An adverse employment action under the Rehabilitation Act is defined as a "materially adverse change in the terms and conditions of Dr. Finch Cruz' employment." Examples of adverse employment actions include firing, failing to promote, negative performance evaluation, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other facts unique to a particular situation.

Authority:  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Hollins v. Atlantic Co.*, 188
F.3d 652, 662 (6th Cir. 1999).

**Proposed Instruction No. 29**

G.    <u>Rehabilitation Act Causation - "Soley because of Plaintiff's Disability"</u>

Finally, if you find that Plaintiff was a qualified individual with a disability and that the VA took one or more adverse actions against her you must decide whether the VA took that action "solely because of" Plaintiff's disability. Put another way, you must decide whether Plaintiff's disability was the main reason for Defendant's decision.

Authority: *Bent-Crumbley v. Brennan*, 19-1328, 2020 WL 360437, at *3 (6th Cir. Jan. 22, 2020).

**Proposed Instruction No. 30**

H.   Elements of a Rehabilitation Claim- Harassment- Hostile Work Environment- Tangible Employment Action

Dr. Finch Cruz claims that she was subjected to harassment by Dr. Thomas Ferguson and other VA employees that this harassment was motivated by Dr. Finch Cruz' disability and request for accommodation.

VA is liable for the actions of Dr. Thomas Ferguson and other VA employees in plaintiff's claim of harassment if Dr. Finch Cruz proves all of the following elements by a preponderance of the evidence:

First: That Dr. Finch Cruz has a "disability" within the meaning of the Rehabilitation Act;

Second: That Dr. Finch Cruz is a "qualified individual" within the meaning of the Rehabilitation Act;

Third: That Dr. Finch Cruz was subjected to harassment by Dr. Thomas Ferguson management officials and other VA employees including but not limited to:

a)   Asking Dr. Finch Cruz to step down as Service Chief

b)   Removing Dr. Finch Cruz as Service Chief

c)   Relocating Dr. Finch Cruz' office to the basement of VAMC Memphis

d)   Making a new rule that if doctors do not have OPPEs then they would not be approved for credentialing if if they were approved by the credentialing committee

e)   Affecting her credentialing by not signing Dr. Finch Cruz' OPPEs.

f)   Reducing Dr. Finch Cruz FY 2017 performance pay

g)    Subjecting Dr. Finch Cruz to an Administrative Fact Finding

h)    Subjecting Dr. Finch Cruz to an Administrative Investigation Board

i)    Falsifying evidence and creating false evidence against Dr. Finch Cruz

j)    Recommending her Removal as Chief of Service

k)    Recommending that Dr. Finch Cruz' license to practice medicine be removed

l)    Reporting Dr. Finch Cruz to OIG under false allegations

m)    Discharging Dr. Finch Cruz from VAMC Memphis

n)    And all other acts as presented by the Plaintiff

Fourth: Dr. Thomas Ferguson and other VA employees' conduct was not welcomed by Dr. Finch Cruz.

Fifth: The conduct of Dr. Thomas Ferguson and others was motivated by the fact that Dr. Finch Cruz has a disability, as defined by the Rehabilitation Act and/or that Dr. Finch Cruz sought an accommodation for that disability.

Sixth: The conduct was so severe or pervasive that a reasonable person in Dr. Finch Cruz' position would find Dr. Finch Cruz' work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of the reaction of a reasonable person with Dr. Finch Cruz' disability to the same or similar work environment.

Seventh: Dr. Finch Cruz believed her work environment to be hostile or abusive as a result of Dr. Ferguson and other VA employees' conduct.

Eighth: Dr. Finch Cruz suffered an adverse "tangible employment action" as a result of the hostile work environment. A tangible employment action is defined as a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

Authority: 3rd Circuit Model Jury Instruction 9.1.4; Patterson *v. McLean Credit Union,* 491 U.S. 164, 180 (1989).

**Proposed Instruction No. 31**

I.    Rehabilitation Act- Hostile or Abusive Work Environment

In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

• The total physical environment of Dr. Finch Cruz' work area.

• The degree and type of language and insult that filled the environment before and after Dr. Finch Cruz arrived.

• The reasonable expectations of Dr. Finch Cruz upon entering the environment.

• The frequency of the offensive conduct.

• The severity of the conduct.

• The effect of the working environment on Dr. Finch Cruz' mental and emotional well-being.

• Whether the conduct was unwelcome, that is, conduct Dr. Finch Cruz regarded as unwanted or unpleasant.

• Whether the conduct was pervasive.

• Whether the conduct was directed toward Dr. Finch Cruz.

• Whether the conduct was physically threatening or humiliating.

• Whether the conduct was merely a tasteless remark.

• Whether the conduct unreasonably interfered with Dr. Finch Cruz' work performance.

Conduct that amounts only to ordinary socializing in the workplace, such as occasional horseplay, occasional use of abusive language, tasteless jokes, and occasional teasing, does not constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment.  Moreover, isolated incidents, unless extremely serious, will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Dr. Finch Cruz was harassed because of her disability. The harassing conduct may, but need not be specifically directed at Dr. Finch Cruz' disability. The key question is whether Dr. Finch Cruz, as a person with cancer was subjected to harsh employment conditions to which employees without a disability were not.

It is important to understand that, in determining whether a hostile work environment existed at the VA you must consider the evidence from the perspective of a reasonable person with Dr. Finch Cruz' disability in the same position. That is, you must determine whether a reasonable person with cancer would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable person with cancer The reasonable person with canceris simply one of normal sensitivity and emotional make-up.

Authority: 3rd Circuit Model Jury Instruction 9.2.3.

**Proposed Jury Instruction No. 32**

In this case Dr. Finch Cruz is alleging that the VA removed her from her position as Service Chief of PLMS, denied her pay and discharged her from Federal employment. In order for Dr. Finch Cruz to recover on this discrimination claim against the VA, Dr. Finch Cruz must prove that the VA intentionally discriminated against her. This means that Dr. Finch Cruz must prove that her sex was a determinative factor in the VA's decision to remove her from her position as Service Chief of PLMS, denied her pay and discharge her from Federal employment.

To prevail on this claim, Dr. Finch Cruz must prove both of the following by a preponderance of the evidence:

First: The VA demoted, denied pay, pay opportunities and constructively discharged Dr. Finch Cruz in a serious and tangible way with respect to Dr. Finch Cruz compensation, terms, conditions, or privileges of employment; and

Second: Dr. Finch Cruz' sex was a determinative factor in the VA's decision.

Although Dr. Finch Cruz must prove that the VA acted with the intent to discriminate, she is not required to prove that the VA acted with the particular intent to violate her federal civil rights. Moreover, Dr, Finch Cruz is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

You should weigh all the evidence received in the case in deciding whether the VA intentionally discriminated against Dr. Finch Cruz.

61

Authority: 3rd Circuit Model Jury Instructions 5.1.2

**Proposed Instruction No. 33**

J.   Elements of a Title VII Claim — Harassment —Hostile Work Environment — Tangible

Employment Action

In order for Dr. Finch Cruz to recover on her hostile work environment claim based on sex

discrimination, under Title VII she must prove that VAMC-Memphis intentionally discriminated

against her. Harassment is unwelcome and hostile if, considering all the evidence, it is

sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and to create

an abusive work environment, or unreasonably interfere with the plaintiff's work performance.

Dr. Finch Cruz claims that she was subjected to harassment by Dr. Thomas Ferguson and

that this harassment was motivated by Dr. Finch Cruz' sex, ...  VA is liable for harassment if Dr.

Finch Cruz proves all of the following elements by a preponderance of the evidence:

1.    That she belonged to a protected class.  In order to satisfy the first element of her *prima*

*facie* case, Dr. Finch Cruz need only show that her sex, female, is a protected status.

2.    That she was subjected to unwelcomed harassment based on her sex.

3.    That the harassment was based on Dr. Finch Cruz' sex.

4.    That the conduct was so severe or pervasive that a reasonable person in Dr. Finch Cruz'

position would find Dr. Finch Cruz' work environment to be hostile or abusive. This element

requires you to look at the evidence from the point of view of a reasonable female's reaction to

Dr. Finch Cruz' work environment.

5.    That Dr. Finch Cruz believed her work environment to be hostile or abusive as a result of

VA conduct.

6.    Dr. Finch Cruz suffered an adverse "tangible employment action" as a result of the hostile

work environment. A tangible employment action is defined as a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

Authority: 3rd Circuit Model Jury Instructions 6.1.3; *McCombs v. Meijer, Inc.,* 395 F.3d 346, 353 (6th Cir.2005)

**Proposed Instruction No. 34**

K.   Definition of Hostile Work Environment

In determining whether or not Dr. Finch Cruz was subjected to a hostile work environment based on her sex, Dr. Finch Cruz must prove that she was subjected to an adverse employment decision. An adverse employment action is one that is serious and tangible enough to alter an employee's compensation, terms, or conditions of employment. In other words, VAMC - Memphis must have caused an intentional, significant change in Dr. Finch Cruz' employment status that was adverse to her, such as firing, unpaid suspension, reassignment with significantly different responsibilities, or a decision causing material changes in benefits. In determining whether a work environment is "hostile" you must look at all of the circumstances, which may include:

- The total physical environment of Dr. Finch Cruz' work area.
- The degree and type of language and insult that filled the environment before and after Dr. Finch Cruz arrived.
- The reasonable expectations of Dr. Finch Cruz upon entering the environment.
- The frequency of the offensive conduct.
- The severity of the conduct.
- The effect of the working environment on Dr. Finch Cruz' mental and emotional well-being.
- Whether the conduct was unwelcome, that is, conduct Dr. Finch Cruz regarded as unwanted or unpleasant.
- Whether the conduct was pervasive.
- Whether the conduct was directed toward Dr. Finch Cruz.
- Whether the conduct was physically threatening or humiliating.
- Whether the conduct was merely a tasteless remark.
- Whether the conduct unreasonably interfered with Dr. Finch Cruz' work performance.

65

A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. In determining whether a hostile work environment existed, you must also consider the evidence from the perspective of a reasonable person in the position of the plaintiff. This is an objective standard, and you must look at the evidence from the perspective of a reasonable person's reaction to a similar environment under similar circumstances. You cannot view the evidence from the perspective of an overly sensitive person. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would alter the conditions of employment and create a hostile or offensive working environment or unreasonably interfere with a person's performance of her job duties. An employee is not entitled to a friendly, congenial, or pleasant work place. The harassing conduct may, but need not be sex-based in nature.  You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable member of plaintiff's sex.

Authority: 3rd Circuit Model Jury Instruction 6.2.2; Model Instruction for the U.S. District Court for the Western District of Tennessee, Joh Phipps McCalla (modified). *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016); *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17,  21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Thornton v. Fed. Express Corp.,* 530 F.3d 451, 455  (6th Cir. 2008); *Clark v. UPS*, 400 F.3d 341, 347-351 (6th Cir. 2005). *Hafford*)).

66

**Jury Instruction No. 35**

Cat Paw:

Dr. Finch Cruz claims that the VA's decision to discharge Dr. Finch Cruz was based on the recommendation of Dr. Finch Cruz' supervisor and that Dr. Finch Cruz' sex was a motivating factor in the supervisor's recommendation. If Dr. Finch Cruz' supervisor recommended that the VA discharge Dr. Finch Cruz and Dr. Finch Cruz' sex motivated the supervisor's recommendation, the supervisor's recommendation can be a "motivating factor" behind the VA's employment decision – even if the supervisor did not make the ultimate decision to discharge Dr. Finch Cruz.

But Dr. Finch Cruz' sex can be a motivating factor in the VA's decision only if you find that Dr. Finch Cruz has proved each of the following by a preponderance of the evidence:

a) the supervisor acted with the intent to make the VA discharge Dr. Finch Cruz (which means that the supervisor wanted the VA to discharge Dr. Finch Cruz), or the supervisor believed that [her/her] actions would cause the VA to discharge Dr. Finch Cruz;

b) Dr. Finch Cruz' sex was a motivating factor behind the supervisor's actions; and

c) there was a direct relationship between the supervisor's actions and Dr. Finch Cruz' discharge.]

Authority: Model Jury Instruction 11th Circuit 4.5

**Proposed Instruction No. 36**

L.   Retaliation Claims

Title VII and the Rehabilitation Act protects employees who attempt to exercise the rights guaranteed by federal law against retaliation by employers. Federal law also protects an employee who made a charge, testified, assisted or participated in any manner in a proceeding, or hearing from retaliation.

In order to prove that VA retaliated against Dr. Finch Cruz, she must prove by demonstrating by a preponderance of the evidence:

1.That she engaged in statutorily protected activity and VA knew of the fact;

2. That VA took an action or actions that adversely affected Dr. Finch Cruz; and

3. That VA took the adverse action because of Dr. Finch Cruz' protected conduct.

By "protected activity", I mean complaining about treatment Dr. Finch Cruz experienced because of her race, or disability, filing an internal company complaint in a manner specified for making such a complaint of discrimination, or filing a charge of discrimination against an employer. Thus, a plaintiff who complains about her treatment on the account of her sex, and/or disability, or who files a charge of discrimination against her employer has engaged in protected activity. Activity protected from retaliation under the Title VII and the Rehabilitation Act includes not only bringing or participating in formal actions to enforce Title VII and the Rehabilitation rights, but also informal activity such as requesting an accommodation for a disability.

By "adverse employment action", I mean an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating.

It is not necessary to find discrimination for you to find that the Defendant retaliated against the Plaintiff.

68

Authority:  Adapted from <u>Federal Jury Practice and Instructions,</u> Section 171.25 (5th Ed. 2000); Title VII, 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 1981]; *Burlington N. & S.F. Ry. v. White,* 548 U.S. 53, 68 (2006); *Rorrer v. City of Stow*, 743 F.3d 1025, 1047 (6th Cir. 2014)

**Proposed Instruction No. 37**

M.    Retaliation – Complaint of discrimination

  Laws that prohibit discrimination in the workplace also prohibit an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under those laws. Dr. Finch Cruz does not need to prove that the discrimination of which she complained actually happened in order to prove a claim for retaliation.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876. 11th Cir Pattern Jury Instructions 4.22 and 4.11 (2013)

 (modified)

**Proposed Instruction No. 38**

N.        Retaliation – Causal Connection

To establish the final element of her claim of retaliation – Dr. Finch Cruz must prove by a preponderance of the evidence that the VA took the adverse action alleged by Dr. Finch Cruz because of the protected activity. Finch Cruz does not have to establish that retaliation was the only reason for her termination. Dr. Finch Cruz must establish that "but-for" her protected activity, VA would not have taken the actions it did.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876 (modified).

**Proposed Instruction No. 39**

O.        <u>Proffered Legitimate Reason</u>

If Dr. Finch Cruz proves each of the elements of her claims of discrimination or retaliation by a preponderance of the evidence, then you must decide whether VA has given a legitimate non-discriminatory or non-retaliatory reason for its treatment of Dr. Finch Cruz. VA can satisfy this requirement if it articulates a reason for its actions which does not violate the federal laws prohibiting discrimination in this case.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 40**

P.     Pretext

You may consider whether you believe the reasons Defendant gave for the decision. If you do not believe the reasons she gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reason for the decision also known as pretext. Plaintiff bears the burden of proving pretext by a preponderance of the evidence.

Sources: *Harris v. Birmingham Linen Service,* 715 F.2d 1552, 1556, 1558-59 (11th Cir. 1983 *Bass, v Board of County Commissioners of Orange County, 256* F.3d 1095, 1108 (11th Cir. 2001) procedure evidence of pretext); *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 645 (11th Cir. 1998); *Berg v. Fla. Dept. of Labor* & Supplement Sec. 163 F.3d 1251, 1255 (11th Cir. 1998). (modified)

**Proposed Instruction No. 41**

Q.   Employer's Honest Belief

VA may avoid a finding that its claimed nondiscriminatory reason was pretextual if it establishes that it reasonably relied on the particularized facts that were before it at the time the decision was made even if evidence later shows that the reason was baseless.  VA must show that it "made a reasonably informed and considered decision before taking an adverse employment action."

VA does not enjoy this protection, however, if Dr. Finch Cruz produces evidence sufficient to prove by a preponderance of the evidence that that VA failed to make a reasonably informed and considered decision before taking its adverse employment action...."

Authority: *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 708 (6th Cir.2006); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 653–54 (6th Cir. 2015)

**Proposed Instruction No. 42**

R.   Constructive Discharge

      In this case, Dr. Finch Cruz alleges that one of the adverse tangible employment action was her construction discharge. We have also held that choosing retirement when there was "no definite prospect of continued employment with the company" constitutes constructive discharge.

Authority:  *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1128 (6th Cir.1998).  *Johnson v. Rumsfeld*, 238 Fed. Appx. 105, 109 (6th Cir. 2007)(unpublished)

## IV.   DAMAGES

**Proposed Instruction No. 43**

A.   Consider Damages Only if Necessary

I will now instruct you on the law as it relates to damages. If a party has proven by a preponderance of the evidence that another party is liable on a claim, then you must determine the damages if any to which the party is entitled. You must do this only under the instructions I will give you as to how to calculate damages. You should not infer that Dr. Finch Cruz is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that Dr. Finch Cruz is entitled to recovery.

In this case, if you find for VA on the question of race discrimination (Question No. 1), on the question of disability discrimination (Question No. 2), and on the question of retaliation (Question No. 3), you will not be concerned with the questions of damages that follow. But if you find in favor of the plaintiff on her race or disability discrimination claim or on the claim for retaliation for protected activity, you will, of course, be concerned with the question of damages. It is my duty to instruct you as to the proper measure of damages to be applied in those circumstances.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 44**

B.    Damages – Discrimination and Retaliation Claims

For each claim on which VA is liable, Dr. Finch Cruz is entitled to recover an amount which will reasonably compensate her for the loss and damage she has suffered as a result of VA 's unlawful conduct. Conduct by VA that does not cause harm does not entitle Dr. Finch Cruz to damages. By the same token, harm to Dr. Finch Cruz which is not the result of unlawful conduct by VA does not entitle Dr. Finch Cruz to damages.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

## Title VII – Damages (alternative)

When considering the issue of Dr. Finch Cruz' compensatory damages, you should determine what amount, if any, has been proven by [name of  plaintiff] by a preponderance of the evidence as full, just and reasonable compensation for all of Dr. Finch Cruz' damages as a result of the [discharge/denied promotion], no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the VA. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Dr. Finch Cruz has proved them by a preponderance of the evidence, and no

others:

a)    net lost wages and benefits from the date of [discharge/denied promotion] to the date of your verdict; and

b)    emotional pain and mental anguish.

To determine the amount of Dr. Finch Cruz' net lost wages and benefits, you should consider evidence of the actual wages [he/she] lost and the monetary value of any benefits [he/she] lost.

To determine whether and how much Dr. Finch Cruz should recover  for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. Dr. Finch Cruz does not have to introduce evidence of a monetary value for intangible things like mental anguish. You will determine what amount fairly compensates [her/her] for [her/her] claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

Authority: 11th Cir. Model Jury Instructions 4.5 (modified).

**Proposed Instruction No. 45**

C.      Damages – Proximate Cause

In order to recover damages for any injury, Dr. Finch Cruz must prove that VA's acts were a proximate cause of the harm sustained by her. Proximate cause means that there must be a sufficient causal connection between the acts or omissions of VA and any injury sustained by Dr. Finch Cruz. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damage was a reasonably foreseeable consequence of VA 's act or omission.

If the injury was a direct result or a reasonably probable consequence of VA 's acts or omissions, it was proximately caused by such act or omission. In other words, if VA 's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

A proximate cause need not always be the nearest cause either in time or space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more persons may operate at the same time, either independently or together, to cause an injury.

If you find that VA is liable for race and/or disability discrimination or retaliation, you may award Dr. Finch Cruz reasonable compensation for the following:

- lost wages;

- worry, distress, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and embarrassment or shame; and

- out of pocket expenses suffered as a result of lost benefits provided by her job.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 46**

D.     Damages – Back Pay

If you find that Dr. Finch Cruz lost any wages as a result of race or disability discrimination or retaliation then Dr. Finch Cruz is entitled to recover that pay that she would have received from VA from the date of her loss through the date of the trial. This, of course, is for you to decide.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 47**

E.    Compensatory Damages

If you should find that VA is liable to Dr. Finch Cruz under any theory of liability, then you must determine an amount that is fair compensation for Dr. Finch Cruz' damages. You may award compensatory damages only for injuries that Dr. Finch Cruz proves were proximately caused by VA 's unlawful conduct. The damages, if any, which you award, must be fair compensation, no more and no less. In calculating these compensatory damages, you should not consider any of Dr. Finch Cruz' lost wages, as these are considered separately from compensatory damages, and will be calculated and determined as previously instructed.

You may award compensatory damages for worry, distress, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and embarrassment or shame if you find that these were suffered by Dr. Finch Cruz and were proximately caused by unlawful conduct for which you find VA liable. No evidence of monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of damages that you may decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. On the other hand, the law does not require that Dr. Finch Cruz prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

In addition, the amount of damages claimed in the argument of either counsel must not be considered by you as evidence of reasonable compensation.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876.

**Proposed Instruction No. 48**

F.     Double Recovery Prohibited

You may not, however, award duplicate (or double) damages for the same injury. For example, if you find for Plaintiff on race, sex, national origin and/or disability discrimination or retaliation, you may not count twice Plaintiff's damages. In other words, if the only damages for retaliation are the same damages you would also award for discrimination and you cannot separate the two sets of damages, plaintiff can only recover once for those damages against the defendant.

Authority: Model Instruction given by the U.S. District Court for the Western District of Tennessee in *Preston v. FedEx Corp.*, 2:17-cv-02876

## V.    VERDICT

Finally, ladies and gentlemen, we come to the point where we will discuss the form of your verdict and the process of your deliberations. You will be taking with you to the jury room a verdict form that will reflect your findings. The verdict form reads as follows:

[Read Verdict Form]

You will be selecting a presiding juror after you retire to the jury room. That person will preside over your deliberations and be your spokesperson here in court. When you have completed your deliberations, your presiding juror will fill in and sign the verdict form.

Each of you should deliberate and vote on each issue to be decided.

Before you return your verdict, however, each of you must agree on the answer to each question so that each of you will be able to state truthfully that the verdict is yours.

The verdict you return to the Court must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to each answer. Your verdict must be unanimous.

It is your duty to consult with one another and to reach an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and to change your mind if you are convinced that you were wrong. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

We will be sending with you to the jury room all of the exhibits that have been marked and received in the case. You may not have seen all of these previously and they will be there for your review and consideration. You may take a break before you begin deliberating, but do not begin to deliberate and do not discuss the case at any time unless all of you are present together in the jury room. Some of you have taken notes. I remind you that these are for your own individual use only and are to be used by you only to refresh your recollection about the case. They are not to be shown to others or otherwise used as a basis for your discussion about the case.

If a question arises during deliberations and you need further instructions, please write your question on a sheet of paper, knock on the door of the jury room, and give the question to the court security officer.

I will review your question, and after consulting with all counsel in the case, will either respond to your question in writing or have you return to the courtroom for further oral instructions. Please understand that I may only answer questions about the law and I cannot answer questions about the evidence. I caution you, however, that with regard to any message or question you might send me, you should not tell me your numerical division at any time.

I remind you that you are to decide this case based only on the evidence you have heard in court and on the law I have given you. You are prohibited from considering any other information and you are not to consult any outside sources for information. You must not communicate with or provide any information, photographs, or video to anyone by any means about this case or your deliberations. You may not use any electronic device or media, such as a telephone, cell phone, smart phone or computer; the Internet, any text or instant messaging service; or any chat room,

blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate

with anyone or to conduct any research about this case.

THIS the 7th day of February, 2020.

Respectfully submitted,

Clara Finch Cruz, M.D.

/s/ Kristy L Bennett
Kristy L. Bennett BPR #30016
Tressa V. Johnson BPR #26401
JOHNSON AND BENNETT, PLLC
1331 Union Avenue, Suite 1226
Memphis, TN 38104
(901) 402-6601
(901) 462-8629 (fax)
tressa@myjbfirm.com
kristy@myjbfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Kristy L. Bennett, one of the attorneys for the Plaintiff, do hereby certify that I have this day

served via ECF filing or by United States mail, postage prepaid, a true and correct copy of the

above and foregoing document to the following counsel of record:

Monica M. Simmons-Jones
Reagan Fondren
United States Attorney's Office
167 North Main Street, Suite 800
Memphis, TN 38103
<u>monica.simmons@usdoj.gov</u>
<u>reagan.fondren@usdoj.gov</u>

THER the 7th day of February, 2020.

<u>/s/ Kristy L. Bennett</u>
Kristy L. Bennett